**In the Matter of C.L.T., a minor under the age of 18.**

No. 3607.

Supreme Court of Alaska.

June 22, 1979.

Daniel N. Branch, Alaska Legal Services Corp., Bethel, John W. Coyne, Anchorage and Dennis J. Hopewell, Dillingham, for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellees.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

This case arises out of a proceeding to terminate parental rights due to the alleged physical abuse of a minor child. The judgment entered by the superior court terminated the parental rights of Rita T. and Willie T. to the custody of their minor child, C.L.T., and adjudicated C.L.T. to be a neglected child. Rita T. appeals that judgment.

In October 1976, the state, through the Department of Health and Social Services (hereinafter the Department), filed a petition in superior court seeking temporary custody of C.L.T., an Alaska Native female child who was two years old at the time. The petition, based on AS 47.10.010,[1] alleged that C.L.T. was in need of immediate medical attention because of physical abuse, and that the minor was neglected. The Department sought to remove C.L.T. from her surroundings for her safety.[2] The superior court awarded temporary custody of C.L.T. to the Department for thirty days. The Department placed the child in the care of an uncle.

---

1. At the time the petition was filed, AS 47.10.-010(a) provided in pertinent part:

     *Jurisdiction.* (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the minor

   .    .    .    .    .

   (5) lacks proper parental care by reason of the faults, habit or neglect of his parent, guardian or custodian; . . . .

Ch. 110, § 1, SLA 1967. This statute was amended in 1977, after the commencement of these proceedings. Ch. 63, § 7, SLA 1977, *codified at* AS 47.10.010(a).

2. C.L.T. was living with her mother, Rita T., apparently; C.L.T.'s parents had divorced, and Rita T. had custody of the child.

On November 10, 1976, Judge James Hanson, temporarily sitting in Bethel, continued temporary custody in the Department until a contested hearing could be held. Judge Hanson appointed Michael Bell as attorney for Rita T. The whereabouts of C.L.T.'s father, Willie T., were unknown, although the court attempted to give him notice of the proceedings.[3]

On December 8, 1976, Judge William H. Sanders, temporarily sitting in Bethel, presided over the first part of the adjudication hearing. Judge Sanders heard two witnesses for the state: Dr. George Brenneman, M.D., and a friend who had been staying with Rita T. Dr. Brenneman, who examined C.L.T.'s bruises and burns when the Department sought medical care for her, testified about the nature, extent, and cause of her injuries. The friend, who was babysitting, testified that she had seen Rita T. and her boyfriend beat C.L.T. with a belt and a stick and burn her with a cigarette. The testimony of the two witnesses was tape-recorded. During these proceedings, Judge Sanders appointed J. Randall Luffberry as counsel and guardian ad litem for C.L.T.[4] Mr. Luffberry was not present during this hearing. Finally, Judge Sanders continued temporary custody of C.L.T. in the Department of Health and Social Services. Judge Sanders did not adjudicate C.L.T. dependent at this hearing.

On January 17, 1977, Judge Gerald J. Van Hoomissen, temporarily sitting in Bethel, presided over the continuation of this adjudication hearing. Judge Van Hoomissen heard testimony from one witness, Dorothy Riffe, a social worker with the Department who investigated the reports of C.L.T.'s abuse. Judge Van Hoomissen stated that he would review the tape of the proceedings before Judge Sanders and, based thereon, would enter an adjudication on the Department's petition. Luffberry, counsel and guardian ad litem for C.L.T., and the state agreed to such a procedure; Rita T.'s attorney did not object. On January 21, 1977,

Judge Van Hoomissen issued a written order adjudicating C.L.T. to be a neglected child and terminating the parental rights of Rita T. A disposition hearing was scheduled.

The disposition hearing took place on May 12, 1977, before Judge Van Hoomissen. A final judgment was issued terminating Rita T.'s and Willie T.'s parental rights. C.L.T. was committed to the custody of the Commissioner of the Department of Health and Social Services, who was given authority to consent to the adoption of the child.

Alaska Legal Services Corporation was appointed Rita T.'s attorney for purposes of appeal. Rita T. raises six issues on appeal. She contends that the superior court violated her due process rights in three different respects. She also argues that the superior court committed reversible error when it conducted portions of the hearing in the absence of C.L.T.'s appointed counsel and guardian ad litem. She argues that the superior court's adjudication and disposition orders failed to comply with certain statutory provisions and the Children's Rules. Finally, Rita contends that she is entitled to a new hearing under recent amendments to AS 47.10, as those amendments were interpreted in *In re J.M.*, 573 P.2d 1376 (Alaska 1978) (per curiam).

## I. DUE PROCESS: THE RIGHT TO A FULL AND FAIR HEARING

In this proceeding to terminate parental rights, the judge sat as the trier of fact. Judge Sanders observed the testimony of two of the state's witnesses, Dr. Brenneman and the friend who was babysitting. Judge Sanders made no written findings of fact or conclusions of law with respect to this testimony, nor did he enter an adjudication order. Judge Van Hoomissen observed the testimony of one witness for the state, Dorothy Riffe. Judge Van Hoomissen listened to the tape recorded testimony given before Judge Sanders. On the basis of both the recorded and live testimony, Judge Van

---

3. According to appellant's brief, he is now deceased.

4. Judge Sanders also appointed the Public Defender as attorney for Willie T., the absent father of C.L.T.

Hoomissen issued both the order adjudicating C.L.T. a neglected child and the order of disposition.[5]

■ Appellant contends that the superior court violated her due process right[6] to a full and fair hearing when it, sitting as the finder of fact, terminated her parental rights based in part on direct observation of witnesses and in part on a tape recording of testimony previously given.[7] Appellant implicitly argues that the right to a full and fair hearing includes the right to have the trier of fact observe the oral testimony of all witnesses, especially the testimony given under cross-examination.[8]

■ We decline to reach the merits of the due process argument advanced by Rita T. While some cases arguably may support the proposition that due process requires the fact finder to base its findings on testimony of witnesses personally observed, especially if such testimony is in conflict,[9] in this case, Rita T.'s trial attorney raised no objection when Judge Van Hoomissen expressed his intent to review and rely on the recording of proceedings before Judge Sanders. Failure to object to alleged error at the trial level may preclude raising the point on appeal. *E. g., Chugach Electric Association v. Lewis*, 453 P.2d 345, 349 (Alaska 1969). By consenting to certain procedures or by failing to object to others, a party may waive those rights which are arguably encompassed within due process guarantees. This was made explicit in *People v. Sanders*, 98 Cal.App.2d 703, 220 P.2d 761, 763 (1950), where the court held that the accused waived his right to have the trier of fact view all witnesses at trial when he consented to submission of the case against him on the transcript of testimony that right in both criminal and civil proceedings. As the Supreme Court noted in *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377, 1390–91 (1959):

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. . . . We have formalized these protections in the requirements of confrontation and cross-examination.

We find no facts indicating that appellant's due process right of confrontation and cross-examination was impaired. Appellant was represented by counsel in the termination proceeding. Appellant's counsel questioned the witnesses called by the state. While the cross-examination may not have been as extensive as that which appellant's present counsel would have conducted, nevertheless, the opportunity for effective cross-examination was presented. The due process clause requires no more.

---

5. We are cognizant of the problems confronting visiting judges in locations remote from their regular place of duty. We recognize that the use of the taped testimony was a good faith effort to overcome some of the difficulties hearing cases in places that have no permanent judge. We note that Judge Cooke has been permanently assigned to Bethel.

6. Section 1 of the fourteenth amendment to the United States Constitution provides in part:
   No state shall . . . deprive any person of life, liberty, or property, without due process of law . . .
   Article I, section 7 of the Alaska Constitution provides in part:
   No person shall be deprived of life, liberty, or property, without due process of law.

7. We note that the terms of AS 22.20.020(a), which specifies grounds for disqualification of a judge for cause, might prohibit the practice adopted by the superior court in this case. AS 22.20.020(a)(2) specifies:
   A judicial officer may not act as such in a court of which he is a member in an action in which

   . . . . .

   (2) he was not present and sitting as a member of the court at the hearing of a matter submitted for its decision

   . . . . .

   Since the parties have not raised the relevance of this statute to the case at bar, we intimate no view as to its proper interpretation.

8. Appellant's brief refers to the due process right to confront and cross-examine adverse witnesses. We recognize the importance of

9. *See, e.g., Federal Deposit Ins. Corp. v. Siraco*, 174 F.2d 360, 364 (2d Cir. 1949); *Smith v. Dental Prod. Co.*, 168 F.2d 516, 518–19 (7th Cir. 1948); *In re Sullivan*, 143 Cal. 462, 77 P. 153, 155 (1904); *Fox v. Fox*, 127 Cal.App.2d 253, 273 P.2d 585, 586 (1954); *Anderson v. Dewey*, 82 Idaho 173, 350 P.2d 734, 737 (1960); *People ex rel. Reiter v. Lupe*, 405 Ill. 66, 89 N.E.2d 824, 826 (1950).

from the preliminary examination.[10] We agree with the state's contention that the failure of Rita T.'s counsel to object to Judge Van Hoomissen's use of the taped testimony waived any alleged defects in the procedure.

Appellant contends, however, that no objection was necessary because the trial court's action constituted plain error. In Alaska, the supreme court will consider plain error, even though not objected to below, if it is so substantial as to result in a miscarriage of justice. *E. g., Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 90 (Alaska 1974).

If the superior court committed error, we do not believe it was so substantial as to result in injustice to Rita T. Because the testimony heard by Judge Sanders was not in conflict, the credibility of the witnesses was not the critical issue. Moreover, Judge Van Hoomissen did listen to the tape recordings of prior testimony. A tape recording conveys more information as to the credibility of witnesses than is conveyed by a sterile written transcript, for it allows the listener to hear the tone, inflection and hesitation, if any, of the speaker. Finally, Rita T. has made no claim on appeal that the witnesses testified untruthfully. Accordingly, we find that this case is not appropriate for invoking the plain error doctrine.

## II. DUE PROCESS: APPELLANT'S INABILITY TO COMMUNICATE WITH COUNSEL

Appellant's second assignment of error on appeal again rests on the due process clause. Rita T. contends that she was unable to communicate effectively with her appointed counsel, and that such inability violated her due process rights.

Appellant assumes that the substantive content of the due process right to counsel is the same in both criminal proceedings and in proceedings brought to terminate parental rights.[11] The degree of counsel-client communication required by due process may not be the same in criminal proceedings and termination proceedings. As we have noted previously:

Due process is flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the proceeding.

*Otton v. Zaborac*, 525 P.2d 537, 539 (Alaska 1974) (citation omitted). We need not reach the issue of whether due process means the same in criminal as well as termination proceedings, however, because we find a more fundamental flaw in the argument.

Neither the record in this case nor the briefs submitted by appellant's current attorney provide us with a convincing factual basis for concluding that Rita was unable to communicate effectively with her trial counsel. There is some evidence in the record that Bell had trouble communicating with Rita T. and felt he was not "getting through" to her. No continuance was requested, however, at the time that Bell indicated he was having difficulty. No witnesses were called to testify as to her behavior or mental condition. Counsel did not ask that a psychiatric evaluation of Rita T., made for purposes of a related criminal proceeding, be made a part of the record on appeal in this case. Counsel's opinion as to the competency of his client, while relevant, is not determinative. *McKinney v. State*, 566 P.2d 653, 660 (Alaska 1977). For aught that appears in the record, Bell's difficulty in talking with Rita T. was an isolated event. In the absence of a more substantial

---

10. In *Hughes v. Demund*, 96 Cal.App. 365, 274 P. 405 (1929), the court found reversible error when a successor judge used a transcript of proceedings before another judge in deciding to enter an interlocutory decree dissolving a partnership. The court, however, specifically stated:

In the absence of consent or waiver, it was error for Judge Collier to make findings and

decide material issues from the evidence introduced before Judge Moncur.

274 P. at 406 (emphasis added).

11. Appellant relies on cases which have defined the degree of communication and rapport which must exist between a criminal accused and counsel in order to satisfy due process. *See, e.g., Kostic v. Smedley*, 522 P.2d 535, 537–38 (Alaska 1974).

factual basis,[12] we are unable to conclude that Rita T. was either incompetent or unable to communicate effectively with trial counsel.

## III. DUE PROCESS: STANDARD OF PROOF

Rita contends that the Alaska statutory scheme which allows parental rights to be terminated based on a standard of proof less stringent than "beyond a reasonable doubt" violates the due process clauses of both the United States Constitution and the Alaska Constitution.

Rita's attack focuses on AS 47.10.-080(c)(3)(D), which delineates the standard of proof which must be met by the state before the superior court may enter a decree terminating parental rights.[13] At the time these proceedings began, AS 47.10.-080(c)(3)(D) provided:

(c) If the court finds that the minor is dependent, it shall

. . . . .

(3) by order, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, if one of the following conditions exists:

. . . . .

(D) each parent, or the surviving parent, or one parent if the other has been judicially deprived of custody and visitation rights, has demonstrated by his conduct, *proven by clear* and convincing *proof amounting to more than a preponderance of the evidence* that he is unfit to continue to exercise his parental rights and responsibilities. [emphasis added][14]

In this case, the superior court found that there was "clear, cogent, and convincing evidence" that Rita had abused C.L.T. The court further found that the state had established by "clear, cogent and convincing evidence" that the parental rights of Rita should be terminated. Thus, the court complied with the mandate of AS 47.10.-080(c)(3)(D). The only question is whether the standard of proof established by the statute violates due process.

Our opinions have recognized the importance of the family unit. *See, e. g., Reynolds v. Kimmons,* 569 P.2d 799, 802 (Alaska 1977). Indeed, the interest of a parent in protecting the integrity of the family unit has been characterized by some courts[15] as a fundamental right which, accordingly, is protected by the due process clause. *See Alsager v. District Court,* 406 F.Supp. 10, 16 (S.D.Iowa 1975), *reversed and remanded on*

---

**12.** Compare the detailed record and factual analysis in *McKinney v. State,* 566 P.2d 653 (Alaska 1977) (record supported trial court's finding of competency).

**13.** Rita's constitutional challenge is limited to the standard of proof provisions contained in Alaska's "statutory scheme." Only AS 47.10.-080(c)(3)(D) specifies a standard of proof, and its language governs only *disposition orders* terminating parental rights. Appellant does not attack the *Children's Rule 21(a),* which delineates the standard of proof for the adjudicative stage:

*Standard of Proof.* In determining the issues of delinquency, dependency or need of supervision in the adjudicatory phase of a children's proceeding, the standard of proof shall be as follows:

(1) If a child is charged with any act which may result in his incarceration, there must be proof beyond a reasonable doubt.

(2) *In other cases, the proof shall be by a preponderance of the evidence.* [emphasis added]

Accordingly, we have no occasion to pass on the standard of proof applicable to the adjudicative phase of the children's hearing, as specified in Rule 21(a).

**14.** Ch. 118, § 2, SLA 1962, current version enacted by Ch. 63, § 16, SLA 1977 (codified at AS 47.10.080(c)(3)).

**15.** We have never explicitly held that a fundamental rights analysis will be employed in reviewing orders which terminate parental rights. We expressed our attitude toward the parent-child relationship in *D.M. v. State,* 515 P.2d 1234, 1237 (Alaska 1973) (footnote omitted):

We acknowledge that parental rights are of serious and substantial import. We note, however, that in recent years the courts have become increasingly aware of the rights of children.

*Reynolds v. Kimmons,* 569 P.2d 799 (Alaska 1977), cited by appellant, is not to the contrary.

*other grounds,* 518 F.2d 1160 (8th Cir. 1975).[16] Government interference with the family unit will be scrutinized closely by courts. *Sims v. State Department of Public Welfare,* 438 F.Supp. 1179, 1190–91 (S.D. Tex.1977) (three-judge court), *prob. juris. noted sub nom., Moore v. Sims,* 439 U.S. 925, 99 S.Ct. 306, 58 L.Ed.2d 317 (1978). It does not follow, however, that the government must always support a denial of a fundamental right with facts that have been proved beyond a reasonable doubt.

■ The cases in which the Supreme Court has required that underlying facts be proved beyond a reasonable doubt have involved circumstances where an individual has been either charged with criminal conduct or threatened with a denial of physical liberty through juvenile delinquency proceedings.[17] The Supreme Court has recently held that the federal due process clause does not require proof beyond a reasonable doubt when an individual is faced with potential civil confinement. *Addington v. Texas,* —— U.S. ——, 99 S.Ct. 1804, 60 L.Ed.2d 323.[18] The Court recognized that the law has produced essentially three standards or levels of proof for different types of cases: proof by preponderance of the evidence, proof by clear and convincing evidence, and proof beyond a reasonable doubt. *Id.* at —— –——, 99 S.Ct. 1804. The Court suggested that in civil proceedings, even when "particularly important individual interests" are implicated, the due process clause requires that the moving party satisfy only the "clear and convincing" standard of proof. —— U.S. at ——, ——, 99 S.Ct. 1804. In proceedings brought to terminate parental rights, the parent is neither charged with criminal behavior nor subject to incarceration as a direct consequence of the proceeding. Thus, we find nothing in the federal constitution that compels adoption of the proof beyond a reasonable doubt standard in termination proceedings.

We have not squarely ruled on the precise issue here presented, but our holding on a related issue strongly suggests that "clear and convincing" evidence of a parent's conduct demonstrating unfitness is sufficient to support termination of parental rights. *In re Adoption of K.S.,* 543 P.2d 1191 (Alaska 1975), dealt with an adoption proceeding in which the natural mother of a child challenged a superior court decree allowing another couple to adopt the child. The superi-

**16.** The United States Supreme Court has come very close to recognizing a parent's right to the custody, care and nurture of a child as fundamental.

The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, [1045,] [29 A.L.R. 1446] (1923), "basic civil rights of man," *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, [1660] (1942), and "[r]ights far more precious . . . than property rights," *May v. Anderson,* 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221, [1226] (1953).

*Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). *Accord, Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511, 519 (1978).

**17.** *Speiser v. Randall,* 357 U.S. 513, 525–26, 78 S.Ct. 1332, 2 L.Ed.2d 1460, 1472–73 (1958) (criminal defendants threatened with incarceration); *In re Winship,* 397 U.S. 358, 365–67, 90 S.Ct. 1068, 25 L.Ed.2d 368, 376–77 (1970) (juveniles charged with acts which would constitute a crime if committed by an adult and threatened with institutional confinement). The standard of proof beyond a reasonable doubt is "designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington v. Texas,* —— U.S. ——, —— –——, 99 S.Ct. 1804, 1808, 60 L.Ed. 323 (footnote omitted).

**18.** In *Addington,* the Supreme Court held that, as a matter of federal law, the due process clause does not require proof beyond a reasonable doubt in a civil proceeding under state law to involuntarily commit an individual to a state mental hospital for an indefinite period of time. *Addington* effectively overrules those lower federal court cases, cited by appellant, which have held that mental illness and dangerousness in involuntary civil commitment proceedings must be proved beyond a reasonable doubt. *See In re Ballay,* 157 U.S.App.D.C. 59, 60–61, 482 F.2d 648, 649–50, 667–68 (1973); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1093–96 (E.D.Wis.1972) (three-judge court), *vacated and remanded on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) (per curiam).

or court based its decision on a statute which provided that a natural parent's consent to adoption is not required

> from a parent adjudged by the court to be *unfit to have the care and custody of the child.*[19]

The superior court held that the parents seeking adoption must prove the natural parents' "unfitness" by clear and convincing proof. After noting the parallel "unfitness" requirement in AS 47.10.080(c)(3)(D), we held the clear and convincing standard of proof to be proper in the adoption context:

> There appears to be no rational basis for the application of a lesser standard of proof in adoption cases since a finding of unfitness would incur the same result: a termination of parental rights. Hence, it would appear that the standard of proof enunciated by the trial court, one requiring clear and convincing evidence of the natural mother's unfitness, was proper.

543 P.2d at 1195.

■ We now hold that the due process clause does not require a standard of proof greater than clear and convincing evidence when the state seeks to terminate parental rights because of unfitness. Cases from other jurisdictions directly support this holding. *See Sims v. State Department of Public Welfare,* 438 F.Supp. at 1194 (three-judge court); *Alsager v. District Court,* 406 F.Supp. at 25; *Caruso v. Superior Court,* 100 Ariz. 167, 412 P.2d 463, 467 (1966).[20] Clear and convincing proof is a more demanding standard than a mere preponderance of the evidence and is adequate to protect the parent's substantial interest in his or her child custody rights. This evidentiary standard balances the competing interests involved in a proceeding brought to terminate parental rights,[21] one of which is the right of a *child* to an adequate home.[22] Appellant all but ignores this interest. When a petition is brought to terminate an individual's parental rights based upon alleged child abuse, the child's interests do not necessarily coincide with the parent's interest in continuation of the family unit. While appellant's standard would give the parent even greater due process protection, it would simultaneously decrease the ability of the state to protect the rights of the child. We are convinced that due process does not require us to adopt such a standard.

## IV. ABSENCE OF THE GUARDIAN AD LITEM FROM THE CHILD HEARING

■ In her fourth assignment of error on appeal, Rita contends that the absence of C.L.T.'s guardian ad litem and attorney during the disposition hearing and part of the adjudication hearing invalidates the action taken by the trial court.[23]

**19.** Section 21–3–13 ACLA 1949 (codified at AS 20.10.040(6) (1962)), *repealed by* ch. 84, § 2, SLA 1974. That section, specifying when consent of natural parents was not required for adoption, has been replaced in substance by AS 20.15.050.

**20.** Our research reveals, and appellant presents, no case holding that due process requires that parental unfitness in termination proceedings be demonstrated by proof beyond a reasonable doubt.

**21.** As pointed out by the court in *Sims v. State Department of Public Welfare,* 438 F.Supp. at 1191, three interests are involved:
> [T]he liberty and privacy interest afforded to the parents, the interest of the state, as *parens patriae,* in protecting children from harm, and finally, the often silent interest of the child.

**22.** We have previously noted:
> The parents' constitutional right to the care and custody of their children must be balanced against the rights of their children to an adequate home and education.

*In re S.D., Jr.,* 549 P.2d 1190, 1201 (Alaska 1976).

**23.** The state questions Rita's standing to raise the issue of the guardian's absence. We have held that parents have standing to challenge on appeal a determination of what is in the best interests of the child. *Bonjour v. Bonjour,* 592 P.2d 1233 (Alaska 1979); *Carle v. Carle,* 503 P.2d 1050, 1053 n.5 (Alaska 1972). Since termination proceedings similarly involve a determination of what is in the child's best interests, we believe that Rita has standing to argue that her child's rights, whether constitutional or statutory, have been violated.

In this case, Judge Sanders appointed Randall Luffberry to act as both attorney and guardian ad litem for C.L.T. Immediately after the appointment, Judge Sanders heard testimony from two witnesses for the state. Mr. Luffberry was not present. Counsel for appellant stated that he had "no objection" to the absence of Luffberry, since the guardian/attorney could listen to the tape recorded testimony of the proceedings and call back any witness for further testimony if he so desired.

On January 17, 1977, the hearing was continued before Judge Van Hoomissen. Luffberry was present during these proceedings in which one witness testified for the state. Four days later, Judge Van Hoomissen issued the "Order of Termination" which, *inter alia,* ordered Mr. Luffberry to inform the court of his recommendation as to the disposition of the case either by written report or through personal appearance at the disposition hearing.' Luffberry did not attend the disposition hearing held before Judge Van Hoomissen on May 12, 1977, nor does it appear from the record that he furnished the court with his written recommendations as to disposition.

■ In appointing Randall Luffberry as the child's attorney and guardian ad litem, the trial court was acting pursuant to AS 47.10.050, which at that time provided in part:

> *Representation of Child.* (a) The court may, upon the motion of either party or upon its own motion, appoint an attorney

or guardian ad litem to represent the interests of a minor or dependent child with respect to his custody, support, and visitation or in any other legal proceeding involving his welfare.[24]

Children's Rule 12(c)(3) specifies that the presence of the guardian ad litem, if one has been appointed, is *required* at a child hearing. Under the plain language of the statute, Mr. Luffberry's presence was required at the child hearing, since he was both counsel and guardian ad litem for the child.

■ We have emphasized the importance of participation by the guardian ad litem in *Veazey v. Veazey,* 560 P.2d 382, 387 (Alaska 1977) (citation omitted), where we stated:

> [A] guardian ad litem appointed pursuant to AS 09.65.130 is in every sense the child's attorney, with not only the power but the responsibility to represent his client zealously and to the best of his ability . . . . He should exercise his best professional judgment on what disposition would further the best interests of the child, his client, and at the hearing vigorously advocate that position before the court.

The superior court committed error when it commenced the adjudicative phase of the hearing in the absence of C.L.T.'s counsel and guardian.[25]

■ Although we find error, we hold that it is not reversible.[26] Appellant asserts

24. Ch. 167, § 2, SLA 1975 (current version at AS 47.10.050(a)). This provision is reinforced by Children's Rule 11, which, in certain circumstances, makes the appointment of a guardian ad litem for a minor child mandatory at a hearing on severance of parental rights. Children's Rule 11(b) provides:

    *Appointment of Counsel for Absent Parties.* At any hearing in which the severance of the parental relationship between the child and his natural parents is or may be in issue, and the parent or parents, guardian, or custodian have failed to appear after proper service of notice, and it appears to the court that a continuance is not likely to result in the attendance of the nonappearing party, the court shall appoint counsel to represent the absent party or parties. *The court shall also*

*appoint a guardian ad litem for the child.* [emphasis added]

25. The state's argument that Luffberry voluntarily absented himself from the final hearing misses the mark. In this case, the court proceeded with the adjudicative phase of the hearing (December 8, 1976) in the absence of Mr. Luffberry before, it appears, he had any notice of his appointment.

26. Appellant's reliance on *Wagstaff v. Superior Court,* 535 P.2d 1220 (Alaska 1975), for the proposition that absence of the child's attorney at the hearing requires reversal is misplaced. In *Wagstaff,* the superior court excluded the child's retained counsel from the hearing, effectively eliminating the child's right to counsel. We held that Children's Rule 14 requires the

that "the outcome in the trial court might have been entirely different if the Guardian Ad Litem had been present and carried out his duties as set out in *Veazey*," pointing to the possibility that Luffberry might have "destroyed the credibility" of the state's witnesses on cross-examination. This strains common sense. First of all, appellant's own counsel was present, was afforded the opportunity to cross-examine the witnesses, and apparently was unsuccessful in undermining their credibility. Second, the testimony of the witnesses was perpetuated, and the guardian ad litem was offered the opportunity to recall the witnesses and cross-examine them.[27] Luffberry did not avail himself of this opportunity, suggesting that he did not think cross-examination would be helpful.[28] Finally, Luffberry never objected to this procedure, nor did he appeal the superior court's action to this court. Under these circumstances the failure to conduct the hearing in the presence of the child's counsel and guardian ad litem was harmless error.

Other issues raised by Rita with respect to the guardian ad litem we find without merit.

## V. COMPLIANCE WITH STATUTES AND RULES OF COURT

Appellant contends that the adjudicative and dispositional orders terminating Rita's parental rights did not meet statutory and rule of court requirements regarding findings of fact.[29] The state contends that the superior court's orders are sufficient under the statutes and the rules.

The trial court terminated Rita T.'s parental rights pursuant to AS 47.10.-080(c)(3)(D).[30] Children's Rule 21 requires the court to make written findings of fact supporting a judgment of dependency.[31] Children's Rule 22 requires the court to make written findings of fact supporting the disposition ordered.[32]

On January 21, 1977, Judge Van Hoomissen issued an "Order of Termination" which included certain findings of fact and which

---

child's chosen counsel to be present at the hearing. *Id.* at 1227. In this case, the superior court appointed counsel for the child and made provision for counsel to participate in a meaningful way in the phases of the child hearing.

27. The superior court's decision to perpetuate testimony and to afford the guardian the opportunity to recall witnesses saves this particular case from reversal.

28. We cannot even assume, as appellant does, that Luffberry would have concluded that keeping C.L.T. with her mother was in C.L.T.'s best interests. If he had been present, he might even have attempted to strengthen the state's case.

29. Although appellant seeks "reversal" of these orders, we note that the appropriate remedy, if appellant were successful, would be to vacate the orders and remand the case.

30. At the time that this children's hearing took place, AS 47.10.080 provided, in relevant part:
*Judgments and orders.* (a) The court, at the conclusion of the hearing, or thereafter as the circumstances of the case may require, shall find and enter a judgment that the minor is or is not a delinquent, or a child in need of supervision, or dependent minor.

    (c) If the court finds that the minor is dependent, it shall

(3) by order, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, if one of the following conditions exists:

(D) each parent, or the surviving parent, or one parent if the other has been judicially deprived of custody and visitation rights, has demonstrated by his conduct, proven by clear and convincing proof amounting to more than a preponderance of the evidence that he is unfit to continue to exercise his parental rights and responsibilities.
Ch. 118, § 2, SLA 1962 *current version enacted by* ch. 63, § 16, SLA 1977 (codified at AS 47.10.080).

31. Children's Rule 21(c) states:
*Dependency.* Where, after hearing, the court finds the child to be dependent, it shall issue a judgment of dependency based upon and accompanied by written findings of fact.

32. Children's Rule 22(d) states:
*Findings of Fact.* In all orders of disposition, including temporary orders, the court shall provide written findings of fact supporting the disposition ordered.

terminated Rita's parental rights. On May 12, 1977, Judge Van Hoomissen issued a "Judgment" finalizing the termination of parental rights and obligations of both Rita T. and Willie T. That judgment contains no independent findings of fact. Appellant contends that the "Judgment," standing alone, does not satisfy the written findings requirement of Rule 22(d). Appellant further contends that the "Order of Termination," with its findings of fact, is of no aid to the ᵤtate in showing satisfaction of Rule 22 requirements because it made provision for further testimony in the case and was therefore not final.

█ Appellant's position is a strained interpretation of the superior court proceedings. Although the orders drafted by the superior court lack exacting compliance with the Children's Rules, we find nevertheless that Judge Van Hoomissen's order and judgment satisfy the requirements of AS 47.10.080(c)(3)(D) and Rules 21 and 22.[33] The court's finding of dependency, based upon the abuse of C.L.T. by her mother, is adequately supported by the facts stated in the "Order of Termination."[34] Thus, the requirements of Rule 21(c) were satisfied.

█ The disposition order is the document denominated "Judgment" and dated May 12, 1977. The findings in the "Order of Termination" were undoubtedly meant to be incorporated into the disposition "Judgment" which finally terminated the rights of both Willie T. and Rita T. The findings as to Rita T. contained in the "Order of Termination" were never changed or modified; she introduced no evidence to rebut or explain them. For practical purposes, we consider the findings to be incorporated in the May 12, 1977 "Judgment," thereby satisfying the requirements of Children's Rule 22(d).[35]

Appellant's final contention is that the court's two orders combined do not support the order terminating parental rights. We find this argument to be without merit.

## VI. APPELLANT'S RIGHT TO A NEW HEARING

Appellant's final point is that she is entitled to a new hearing under the amended statutes on delinquents and wards of the court, AS 47.10.010–47.10.142.

The trial court exercised jurisdiction over C.L.T. pursuant to AS 47.10.010(a)(5)[36] and terminated Rita T.'s parental rights and

**33.** We urge trial court judges to follow the procedures and the framework set forth in both the statutes and the court rules. Children's Rule 12(a) specifies two phases in the child hearing: the adjudicative phase and the dispositional phase. At the completion of the adjudicative phase, the court should issue a separate, clearly labeled "Order of Adjudication," which determines the issue of delinquency or dependency, or both, or need of supervision. Children's Rules 12(a)(1), 21(b), 21(c). We note that under the 1977 amendments to AS 47.10.010–.142, the terminology regarding "dependency" or "need of supervision" would no longer be appropriate. *See* discussion in Part VI, *infra*. The adjudication becomes the basis for a disposition or judgment, which also must be based upon and accompanied by written findings of fact. The court should issue a separate, clearly labeled "Order of Disposition," which determines what measures are to be taken in order to correct any undesirable situations found in the adjudicative phase. Children's Rule 22(d). That order should be supported by written findings of fact or should refer to findings of fact previously made.

**34.** It is not clear why the superior court chose to use this title. It is possible that the court was combining the adjudication and disposition orders in one document, a procedure which might be permissible under Rule 22(a). However, the court's specific reference to the disposition hearing to be held in the future undermines this interpretation.

**35.** We reject appellant's argument that the "Judgment" must stand alone. This argument rests on the superior court's "Order of Termination," which reserves to Rita the right to introduce evidence establishing her ability to exercise parental rights and responsibilities. While this indicates that the "Order of Termination" was not a *final* disposition, it does not mean that the court was required to hear further evidence in order to reach a valid disposition. An effective disposition may be predicated on evidence advanced in the adjudication hearing. *See* Children's Rule 22(a). Rita T. was merely afforded an opportunity to present evidence which would overcome the superior court's tentative decision that prior evidence justified a termination of parental rights.

**36.** *See* note 1 *supra*.

obligations pursuant to AS 47.10.080(a) and (c)(3)(D).[37] Under these statutes, in order to terminate parental rights, the superior court was required to find (1) that C.L.T. was a "dependent minor"[38] and (2) that Rita T. had demonstrated by her conduct, proved by clear and convincing proof, that she was unfit to continue to exercise her parental rights and responsibilities.

In 1977, the legislature amended both of these statutes.[39] The amendments are important because they have changed some of the requirements for terminating parental rights. AS 47.10.010(a)(2), the amended jurisdictional provision, now specifies that the court may exercise juvenile jurisdiction over a child who is "in need of aid." A child "in need of aid" appears to be the functional equivalent of a "dependent" child under the old statute. Children in need of aid fall into several different categories. C.L.T. would be a child in need of aid as the result of "having suffered substantial physical harm" under AS 47.10.-010(a)(2)(C).

The statutory provisions governing judgments and orders terminating parental rights have been changed. In order to terminate parental rights, the court must find that the child is in need of aid under AS 47.10.010(a)(2) as the result of parental conduct proved by clear and convincing evidence and that the parental conduct is likely to continue to exist if there is no termination of parental rights, proved again by clear and convincing evidence, AS 47.10.-080(c)(3).

Shortly after these amendments became effective,[40] we decided *In re J.M.*, 573 P.2d

**37.** *See note 30 supra.*

**38.** The superior court implicitly found C.L.T. to be a dependent minor based upon its finding that she was "neglected" due to physical abuse and lack of proper parental care.

**39.** The amendments to these statutes, insofar as they are relevant to the present issue, are as follows. AS 47.10.010 now provides:

(a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the court finds the minor

* * * *

(2) to be *a child in need of aid* as a result of

* * * *

(C) the child having suffered substantial physical harm or if there is an imminent and *substantial risk that the child will suffer such* harm as a result of the actions done by or conditions created by his parent, guardian or custodian or the failure of his parent, guardian or custodian adequately to supervise him

* * * *

AS 47.10.080 now provides:

(a) The court, at the conclusion of the hearing, or thereafter as the circumstances of the case may require, shall find and enter a judgment that the minor is or is not a delinquent or *a child in need of aid.*

* * * *

(c) If the court finds that the minor is a child in need of aid, it shall

* * * *

(3) by order, upon a showing in the adjudication by clear and convincing evidence that there is a child in need of aid under § 10(a)(2) of this chapter as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, and the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child.

* * * *

(f) A minor found to be delinquent or a child in need of aid is a ward of the state as long as he is committed to the department or the department has the power to supervise his actions. The court shall review an order made under (b) or (c)(1) or (2) of this section annually, and may review the order more frequently to determine if continued placement, probation, or supervision, as it is being provided, is in the best interest of the minor and the public. The department, the minor, the minor's parents, guardian, or custodian are entitled, when good cause is shown, to a review on application. If the application is granted, the court shall afford these parties and their counsel reasonable notice in advance of the review and hold a hearing where these parties and their counsel shall be afforded an opportunity to be heard. The minor shall be afforded the opportunity to be present at the review.

**40.** The new law was approved by the governor on May 28, 1977 and became effective August 26, 1977.

1376 (Alaska 1978) (per curiam).[41] Based on that case, Rita T. argues that she is entitled to another hearing under the amended juvenile court's statute.

We do not believe that this issue is properly before us. Rita T. did not request a new hearing from the superior court.[42] If she so desires, she may apply to the superior court for a new hearing. Only after the superior court rules could we consider her right to a new hearing.[43]

The judgment of the superior court terminating Rita T.'s parental rights is affirmed.

AFFIRMED.

**41.** *In re J.M.* held that children adjudged dependent under the old statute, AS 47.10.-010(a)(5), are entitled on request to an adjudicative hearing under the standards of the new statute, AS 47.10.010(a)(2)(C). 573 P.2d at 1378.

**42.** We do not mean to fault Rita's counsel for failing to request a new hearing. The superior court issued its final judgment in this case on May 13, 1977, and Rita filed her notice of appeal on July 6, 1977. The amendments to the statute did not take effect until August 26, 1977. *In re J.M.,* which construed the amendments, was not announced until January 27, 1978. Obviously, counsel could not request a new hearing based upon a case not yet decided. Waiver is not an issue here because the superi-

or court lost jurisdiction over the case before counsel could assert Rita T.'s potential right to a new hearing. *See* Alaska R.App. P. 6.

**43.** We note that subsequent to the entry of judgment in this case, Congress enacted the Indian Child Welfare Act, 25 U.S.C.A. §§ 1901–1963 (Supp.1979). Although the provisions of subchapter I of the Act are applicable to child custody proceedings involving Alaska Natives, the operative provisions of subchapter I did not apply to the proceedings in this case which were conducted prior to the effective date of the Act. *See* 25 U.S.C.A. § 1923 (Supp.1979). We do not pass on the question of whether the Act would be applicable to any further proceedings.