**RITA T., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5036.**

Supreme Court of Alaska.

Feb. 13, 1981.

Daniel N. Branch, Alaska Legal Services Corp., Bethel, for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

When Rita T.'s minor daughter C. L. T., was two years old, Rita and her boyfriend burned the child with a cigarette and beat her with a belt and a stick. As a result of these events, proceedings were commenced in superior court to terminate Rita's parental rights. After hearings in 1976 and 1977, the superior court adjudged C. L. T. to be a neglected child and committed her to the custody of the Department of Health and Social Services. The superior court terminated Rita's parental rights under subdivision (c)(3) of AS 47.10.080.[1] Rita appealed to this court and we affirmed the judgment. *In re C. L. T.*, 597 P.2d 518 (Alaska 1979).

In her first appeal, Rita contended that she was entitled to a review of the order terminating her parental rights. We held

---

1. AS 47.10.080(c) provides in part:

 If the court finds that the minor is a child in need of aid, it shall

 .  .  .  .  .

 (3) by order, upon a showing in the adjudication by clear and convincing evidence that there is a child in need of aid under AS 47.10.010(a)(2) as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, and the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child.

that the issue was not properly before this court because Rita had not requested a hearing on the matter in the superior court. *In re C. L. T.*, 597 P.2d at 531. Rita subsequently applied for a hearing and the superior court denied the application without explanation. Rita has again appealed to this court. We now consider whether she is entitled to a review by the superior court of its order which terminated her parental rights.

AS 47.10.080(f) governs the review by the superior court of its orders relating to delinquent children and children in need of aid (identified as neglected children before the statute was amended). It states:

> A minor found to be delinquent or a child in need of aid is a ward of the state as long as he is committed to the department [of health and social services] or the department has the power to supervise his actions. The court shall review an order made under (b) or (c)(1) or (2) of this section annually, and may review the order more frequently to determine if continued placement, probation, or supervision, as it is being provided, is in the best interest of the minor and the public. The department, the minor, the minor's parents, guardian, or custodian are entitled, when good cause is shown, to a review on application. If the application is granted, the court shall afford these parties and their counsel reasonable notice in advance of the review and hold a hearing where these parties and their counsel shall be afforded an opportunity to be heard. The minor shall be afforded the opportunity to be present at the review.

This subsection contains two separate provisions for the review of orders made under AS 47.10.080. The subsection first provides

that orders made under AS 47.10.080(b), (c)(1) or (c)(2) [2] shall be reviewed automatically each year, or more frequently if necessary. The subsection then provides that orders shall be reviewed upon the application of certain interested parties, such as the minor's parents, when the application establishes good cause for the review. It is clear that orders made under (c)(3) are not entitled to automatic review, inasmuch as subsection (f) specifies which orders are entitled to this review and orders under (c)(3) are not included within the list. There is no similar enumeration of which orders are entitled to review upon a showing of good cause, and the language of the subsection does not clearly indicate whether orders made pursuant to (c)(3) are to be included or not for this type of review.

■ An examination of public policy and the purposes of title 47 as it relates to children, however, convinces us that all orders made pursuant to AS 47.10.080, including orders under subsection (c)(3), are to be reviewed upon application of an interested party if the party establishes good cause for the review, and if the child is still a ward of the court. AS 47.05.060 provides as follows:

> The purpose of this title as it relates to children is to secure for each child the care and guidance, preferably in his own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community; to preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only as a last resort when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the child is removed from his family, to secure for him adequate custody and care.

2. Subsection (b), which is not relevant here, is a lengthy section dealing generally with the dispositive phase of a hearing after a minor is found delinquent. Subsections (c)(1) and (2), provide, in pertinent part:

> (c) If the court finds that the minor is a child in need of aid, it shall
> (1) order the minor committed to the department for placement in an appropriate setting for a period of time not to exceed two

years . . ., except that the department may petition for and the court may grant in a hearing . . . two-year extensions of commitment which do not extend beyond the child's 19th birthday if the extension is in the best interest of the minor and the public; . . .
> (2) order the minor released to his parents, guardian, or some other suitable person

.    .    .    .    .

We believe that an interpretation of subsection (f) which permits the review of an order that terminates parental rights is most consonant with these purposes because it provides an opportunity for the child to resume living with his or her parents when the parents become capable of providing "adequate custody and care" for the child. While it may not be true of all, some parents are capable of changing and overcoming the problems that caused the termination of their parental rights. For those who can now provide the care and guidance "that will serve the moral, emotional, mental and physical welfare of the child," AS 47.05.060, good cause exists for reviewing the order that terminated their parental rights. Many children who become wards of the court when their parents' rights are terminated are not adopted and they therefore remain wards of the court throughout their minority. Permitting a renewal of the relationship between the child and his parents if the child is still a ward of the court and the parents have undergone a substantial rehabilitation fulfills the purposes of title 47 as much, if not more, than permitting the child to spend his or her entire minority in a succession of foster homes.

■ We note that AS 47.10.080(c)(3) requires the Department of Health and Social Services to attempt to find a permanent placement for the child when the parental rights of his natural parents have been terminated,[3] and subdivision (d) of that statute authorizes the Commissioner of Health and Social Services to consent to the adoption of the child.[4] These subsections indicate a legislative intent that permanent homes be found for the children so that a stable family life can be created for them. Our holding in this case does not conflict with this purpose. Once the child has been adopted, he or she is no longer a ward of the court and the natural parents cannot seek review of the order that terminated their parental rights. The entry of a final decree of adoption dissolves any legal relationship between the natural parents and their child,[5] and, therefore, no relationship exists which could be renewed if the order terminating the parental rights were reviewed.

■ We conclude that as long as a child remains the ward of the court, under AS 47.10.080(f) his or her natural parents are entitled to a review of the order terminating their parental rights upon a showing of good cause for the hearing. Good cause could be established if the parents showed that it would be in the best interests of the child to resume living with them because they have sufficiently rehabilitated themselves so that they can provide proper guidance and care for the child.

When Rita applied for a hearing before the superior court, she indicated that as a result of a fourteen-month rehabilitation program she has overcome the problems that led to the termination of her parental rights. She also indicated that professional counselors, social workers and others would be able to establish that she is now capable of providing a warm and loving home for C. L. T. This is a sufficient showing of good cause to entitle her to a review of the order terminating her parental rights if C. L. T. has not yet been adopted.[6]

---

3. AS 47.10.080(c)(3) provides in relevant part that "the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child."

4. AS 47.10.080(d) states: "An order issued under (c)(3) of this section authorizes the commissioner of health and social services or his designee or the guardian of the person of the child to consent to the adoption of the child."

5. AS 20.15.130(a) provides in relevant part:

   A final decree of adoption, whether issued by a court of this state or of any other state, has the following effect as to matters within the jurisdiction or before a court of this state:

(1) except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the natural parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and his relatives, including his natural parents, so that the adopted person thereafter is a stranger to his former relatives for all purposes . . . .

6. We note that at the time of Rita's application for a hearing proceedings for the adoption of C. L. T. had been commenced. If a final decree of adoption has already been entered, Rita's request for a hearing should be denied.

We REMAND this case to the superior court for further proceedings consistent with this opinion.

RABINOWITZ, Chief Justice, concurring.

I agree with the court's construction of AS 47.10.080(f) that a natural parent whose parental rights have been terminated has the right to a review of the order terminating parental rights upon a showing of good cause.

However, I would also grant a hearing to Rita T. to review the original termination order under the significantly stricter standards of the new statute, regardless of whether or not C. L. T. has now been adopted. The new statute became effective less than four months after the order terminating Rita T.'s parental rights was entered under the former statute.

*In the Matter of J. M. and M. M.*, 573 P.2d 1376, 1378–79 (Alaska 1978), holds that the repeal of a former statute and adoption of a new statute with significantly stricter standards constitute good cause for review of a judgment of dependency, and that children adjudged dependent under AS 47.10.-010(a)(5) prior to its repeal are entitled to a hearing under the stricter standards of the new AS 47.10.010(a). Since under the court's decision in the case at bar we have held that good-cause review is available in a termination case, I conclude that Rita T. is entitled to a hearing to review the termination of her parental rights under the standards of the new statute without regard to whether or not C. L. T. has been adopted prior to the hearing. In contrast with the "good cause" of Rita T.'s rehabilitation, the "good cause" justifying the hearing under the new standards is that she has the right to have the new standards applied to the original termination of her parental rights. Thus, the hearing I contemplate would determine whether or not the original termination was valid.