**Harry Robert RANK, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 167.

Supreme Court of Alaska.

July 6, 1962.

Wendell P. Kay, Lester W. Miller, Anchorage, for appellant.

James C. Merbs, Dist. Atty., Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

An unoccupied dwelling owned by appellant Harry Rank and his wife was almost totally destroyed by fire on March 27, 1961. Rank was indicted for first degree arson, and was convicted of that crime after a trial by jury. The main question on this appeal has to do with evidence of Rank's failure to take a polygraph (lie-detector) examination and his claim that the admission of such evidence was reversible error.

## 1. *The Polygraph.*

The testimony on the lie-detector test first came out in the direct examination of police officer Rush for the prosecution. In the course of investigating the fire he had interrogated Rank, and the questions and answers were recorded on a plastic disc on a dictating machine. The state offered the disc in evidence. Defense counsel at first objected; but after hearing the disc played out of the jury's presence, withdrew his objection and permitted the playback to be heard by the jury. The only portion of the recorded testimony that dealt with the polygraph was this:

"Q. (By officer Rush) Mr. Rank, would you be willing to take a polygraph examination to determine if all statements you have made are true?

"A. I would."

After the recorded testimony had been heard, the state continued with its direct examination of Rush. He stated that a typewritten transcript of the recording had been prepared and given to Rank to read. When asked by the district attorney as to "What was done at that time", Rush gave this answer:

"A. He read his statement over and his wife read her statement over and upon completion of both parties reading their statements, Mr. Rank informed me that he had spoken with his lawyer,

his counsel, and had been advised not to sign any statement (pause) or to submit to any polygraph examination, unless the attorney could first see and read his statements."

A few minutes later the subject of the polygraph came up again. The witness had been testifying as to questions he had asked Rank concerning the cause of the fire, and in response to the query "Were there any other types of questions . . . asked of Mr. Rank", said:

"A. I again asked Mr. Rank if he would be willing to submit to a polygraph examination to clear himself of any suspicion or doubt in regard to this fire and he said that he would be real willing to take one but that he had been advised by his counsel not to, and that he would speak to his counsel and attempt to obtain the permission to do so, and would advise accordingly."

On neither occasion when the polygraph was mentioned did the prosecuting attorney pursue the matter further, and on neither occasion did defense counsel make any objection to the admission of this testimony.

On this appeal Rank notes the possibility that his failure to object might be considered a waiver of the asserted error, but contends that justice demands a waiver not be found. He argues it to be a well established rule of law that the results of lie-detector tests are not admissible for the purpose of establishing either the guilt or innocence of a defendant, and that to admit evidence of refusal to submit to the test is prejudicial error.[1] He contends further that this is error so fundamental it may be noticed by this court under Crim.R. 47(b),[2] even though not brought to the attention of the trial court.

■ We need not determine questions relating to the admissibility of lie-detector

1. See State v. Kolander, 236 Minn. 209, 52 N.W.2d 458, 464–465 (1952).

2. Crim.R. 47(b) reads: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

evidence; for we find here a clear case of waiver of any error that might have occurred. And this is not merely by reason of Rank's failure to object; rather, it is by reason of the fact that he went into the subject in great detail in his cross-examination of a state witness and when he testified in his own defense. This is readily apparent from only a portion of defense counsel's cross-examination of officer Rush:

"Q. You stated that you offered him a polygraph test.

"A. Yes sir.

"Q. And that he agreed to take it.

"A. Yes sir.

"Q. Did he take the test?

"A. No sir.

"Q. Did you ever offer it to him?

"A. Yes sir.

"Q. Did he ever refuse to take it.

"A. Yes sir.

"Q. When did he refuse to take it.

"A. On each occasion.

"Q. Well, I thought—

"A. On the first occasion he was questioned if he would be willing to submit to a polygraph examination; he stated that he would. At that time—I am not a polygraph expert and I'm not qualified to give such an examination.

"Q. Are you sure you ever asked him about it again?

"A. Yes sir.

"Q. You're sure of that.

"A. Yes sir.

"Q. Did you ever write that down in your notes that you asked him again but he refused?

"A. Yes sir. Mr. and Mrs. Rank were both asked on the second occasion upon their interview at the office. Mrs. Rank was interviewed by Mr. Dearinger and she was also asked, and

they said that they would give it upon permission of their counsel."

And when the defense put on its case, Rank testified on the subject as follows:

"Q. Do you know whether or not any of the—whether or not Officer Rush ever mentioned a polygraph test.

"A. Yes.

"Q. When did he mention that.

"A. The first night I was down there but he couldn't give it, he's not qualified to give a polygraph.

"Q. At that time were you willing to take it?

"A. Yes.

"Q. Did you tell him so?

"A. Yes.

"Q. Did you ever refuse to take it.

"A. Yes.

"Q. When did you refuse.

"A. When they came out for me to sign the statement I told him that I wasn't going to take the polygraph or sign any, sign any statements on the advice of my attorney."

Rank's refusal to take the polygraph examination was exposed to the jury by his own counsel with an emphasis far greater than that produced by the prosecution. He examined every aspect of the situation, and then after the verdict was returned made the point for the first time that what he had brought so forcibly to the jury's attention was prejudicial to his client's interests.[3] During the trial Rank had presumably taken the position that to explore the subject in detail would be advantageous to his cause. In this court he adopts the totally inconsistent position that he has suffered a grave disadvantage. We hold he is bound by the choice he first made in the court below. He has waived any error that might otherwise have occurred when testimony regarding the polygraph was first brought into the case by a state witness.[4]

---

3. The point was first raised in a motion for a new trial, which was denied. Counsel on this appeal was not the attorney who represented Rank in the court below.

4. Marable v. State, 203 Tenn. 440, 313 S.W. 2d 451, 458–459 (1958).

### 2. *Other Alleged Errors.*

■ The evidence that Rank set the fire was entirely circumstantial. He contends it was insufficient to sustain the conviction because the circumstances connecting him with the crime failed to exclude every reasonable hypothesis except that of guilt.[5]

■ Rank moved for a judgment of acquittal at the close of the state's case. The motion was denied. He then presented evidence in his own behalf, but he did not renew his motion for acquittal at the close of all the evidence as he might have done under Crim.R. 29(b). His failure to do this resulted in a waiver of his right to question the sufficiency of the evidence to support the verdict, and we need not consider the point except to prevent a manifest miscarriage of justice.[6] That doesn't exist here. In reviewing the record, with recognition of the province of the jury to judge the credibility of witnesses, to consider the evidence and to draw justifiable inferences from it, we find that the state proved its case. The jury logically could have reached the conclusion that the evidence excluded every reasonable hypothesis except that of guilt.

■ Rank next argues that evidence taken from the scene of the fire (newspapers, boxes, a pie tin, floor tile sections, etc.) were the result of an unreasonable search and seizure, since a search warrant had not been obtained. This is a point we need not decide. Assuming that Rank had the right to exclude from the jury's consideration evidence procured from the burned premises, he waived the right by failing to move to suppress the evidence[7] and by failing to object to its admissibility during trial.[8]

Other points of alleged error are made by Rank—his claim being that even though individually not of a serious nature, their cumulative effect was sufficient to deprive him of the right to a fair and impartial trial. One incident dealt with a statement made by the prosecutor after he had referred to his lack of success in locating a missing witness and the court had said that unless the testimony of the witness was essential he would not grant a continuance. The district attorney then stated: "Well, I, I can't say it's essential. I think the Court knows what I have in mind."

Rank claims that the obvious effect of this was to create the belief that if the witness had been called he would have directly contradicted Rank's testimony as to his activities on the day of the fire, since Rank had testified earlier that he had talked to this witness during the morning of the fire.

■ A comment of this kind by the prosecuting attorney is undesirable. But Rank failed to object and thus waived the point. Furthermore, taking the remark in its context and the place where it appears in the record, we do not agree that its obvious effect was as Rank now claims it to be.

---

5. In a case where all evidence is circumstantial it is the rule in this jurisdiction that in order to sustain a conviction the state must produce evidence of circumstances which exclude every reasonable hypothesis except that of guilt, or to express the rule another way, the circumstantial evidence must be such as to exclude every reasonable theory consistent with the defendant's innocence. Davis v. State, Opinion No. 75, 369 P.2d 879, 882 (Alaska 1962). The trial court properly instructed the jury on this point.

6. Meeks v. United States, 259 F.2d 328 (5th Cir. 1958); Ansley v. United States, 135 F.2d 207, 208 (5th Cir. 1943).

7. Crim.R. 37(c) provides in part that "A person aggrieved by an unlawful search and seizure may move the judge or magistrate in the judicial district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that

(1) the property was illegally seized without warrant, * * *."

8. Goss v. State, Opinion No. 76, 369 P. 2d 884, 886–887 (Alaska 1962).

Another alleged error deals with the trial court's instruction number nine.[9] Prejudice is claimed on the basis that the instruction strongly suggests Rank made admissions or incriminatory statements, whereas in fact he had made none at all.

Whether or not this instruction was appropriate is unnecessary to decide. No objection was made; the trial court was not afforded the opportunity to correct any error that might have taken place had the instruction not been justified in the light of the evidence presented. Crim.R. 30 controls[10], and we shall not consider this point of alleged error.

The judgment is affirmed.

---

**9.** Instruction No. 9 reads as follows: "All evidence relating to any admission or incriminatory statement claimed to have been made by a defendant outside of court should be considered with caution and weighed with great care."

**10.** Crim.R. 30 in part provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections." Cf. Civ.R. 51, construed in Reiten v. Hendricks, Opinion No. 68, 370 P.2d 166, 169 (Alaska 1962).