Michael L. ALEXANDER, Appellant,

v.

STATE of Alaska, Appellee.

No. 3522.

Supreme Court of Alaska.

May 2, 1980.

Edgar Paul Boyko, Paul L. Davis, Mitchel J. Schapira, Edgar Paul Boyko & Associates, Anchorage, for appellant.

John A. Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Susan M. Delbert, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

This criminal and sentence appeal follows Michael L. Alexander's conviction for statutory rape, in violation of AS 11.15.120(2),[1] and his sentence of seven and one-half years imprisonment. The criminal appeal raises issues of pre-indictment delay, impeachment by prior conviction, an evidentiary ruling, prosecutorial misconduct, and failure to give a cautionary instruction on oral admissions. We find that we cannot determine whether the period of pre-indictment requires a reversal of the conviction because of the handling of the evidentiary hearings. As a result, we must remand this case to the superior court for a factual determination.

The alleged rape occurred in the late afternoon of June 17, 1976, in a borrowed automobile in Anchorage. The complaining witness, A.F., reported the incident on the day it happened. She testified that she and Alexander drove away from Burger King, where A.F. worked, stopping finally on a dirt road.[2] Alexander asked her if she wanted to "ball." According to her testimony, he then produced a knife, told her he would not hurt her, and ordered her into the back seat. Still holding the knife, he directed her to remove her pants and undergarments. He told her to remove her tampax, which she threw out the window. Sexual intercourse followed, with the knife held in Alexander's hand. They then drove back to the Burger King. No knife was ever found.

After the incident, A.F. went to a friend's house, where she was told by her brother that she was "in trouble" with her mother. Her mother arrived shortly.[3] She was angry and began "yelling and screaming" at

---

1. At the time of the offense, AS 11.15.120 provided:

   *Rape.* A person who (1) has carnal knowledge of another person, forcibly and against the will of the other person, or (2) being 16 years of age, carnally knows and abuses a person under 16 years of age, with the person's consent, is guilty of rape.

   Ch. 127, § 74, SLA 1974. AS 11.15.120 was amended, effective January 1, 1977, to insert "or older" and to delete "with the person's consent" following "16 years of age" in clause 2. Ch. 185, § 1, SLA 1976.

   Alexander was over 19 at the time of the offense, and the complaining witness was under 16.

2. A.F. knew Alexander from prior conversations she had had with him at his place of employment.

3. There was testimony that when A.F. first arrived at the friend's home, she was crying and the crotch area of her pants was bloody. She went to the bathroom to get a fresh tampax. A.F. testified that she told her friends of the rape before her mother's arrival.

A.F. for not being at work and for her poor report card,[4] which contained four "F's." [5] A.F. stated that her mother was "pretty strict" and that she was afraid that her father would hit her.

The mother's shouting was interrupted by the revelation from M., one of A.F.'s friends, who told her that "her daughter got raped." The police were then called. A.F. was taken to Providence Hospital for examination and laboratory tests.

Alexander's defense was based on alibi and charges of fabrication on the part of the complaining witness and her friends. He contended that A.F. and friends contrived the rape story to soften her mother's wrath.

Alexander presented evidence that he picked up his wife at work, and then he went to the circus with his wife and son at the time in question on June 17, that they went to eat after the circus, and that he went to a company meeting following the meal. He testified that he did not see A.F. on June 17.

Trial commenced on November 15, 1976. Alexander's motions to dismiss the indictment for pre-indictment delay were denied. The superior court also denied a motion for a protective order to prohibit impeachment of Alexander for a prior robbery conviction. The conviction was ultimately brought before the jury in direct examination of Alexander by defense counsel.[6] A protective order was granted, on the state's motion, to preclude introduction of A.F.'s report card and school absence record.

During his closing argument, the prosecutor displayed A.F.'s blood-stained [7] trousers to the jury.[8] According to Alexander's brief on appeal, which the state does not dispute, the pants were placed on the jury box rail and remained there until the jury retired to deliberate following the court's instructions. No objection was made. Alexander did raise this point, however, in a memorandum in support of a motion for a judgment of acquittal and, alternatively, for a new trial. The motion was denied. The issue was also specified in the points on appeal.

Counsel requested an instruction that Alexander's oral admissions be viewed with caution. The superior court refused to give such an instruction.

The jury returned a verdict of guilty, and Alexander was thereafter sentenced to imprisonment for seven and one-half years. This appeal followed.

## I. PRE-INDICTMENT DELAY

■ The alleged rape occurred on June 17, 1976. Alexander was indicted on September 16, 1976, and was arrested September 21. The delay was thus approximately ninety-one days. Alexander contends that this delay denied him due process of law.[9]

■ In *Coffey v. State*, 585 P.2d 514, 519–20 (Alaska 1978), we articulated the relevant factors to be considered in claims of pre-indictment delay:

Two factors are to be considered under both federal and state law: (1) the rea-

---

4.  A.F. had planned to intercept her report card before her mother checked the mailbox.

5.  When questioned about her school attendance A.F. stated: "I didn't go very often."

6.  It was clear, however, that the prosecutor intended to reveal it should Alexander testify. He stated:

    I would indicate to the court that should the defendant take the stand I would intend to bring to the jury's attention his prior dishonest conviction.

7.  It is undisputed that the stain was due to A.F.'s menstruation, not trauma. The pants were already in evidence.

8.  The prosecutor stated: "One of the things I suppose they planned which you haven't seen yet—the crotch of her pants which has some kind of a red stain there."

9.  U.S.Const. amend. XIV; Alaska Const., art. I, § 7. A claim of pre-accusation delay is regarded as a claim of deprivation of due process of law. *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

sonableness of the delay; and (2) the resulting harm to the accused.[10]

The burden of proof is on the defendant to show the absence of a valid reason for the delay and the fact of prejudice, though the state has the burden, once the issue is raised, to come forward with reasons for the delay. When reasons are advanced, the defendant must show that they do not justify the delay.[11]

Alexander's contention of prejudice focuses on impairment of his alibi defense due to lapse of time. He stresses his and his witnesses' inability to remember clearly the events of June 17 and his inability to find corroborating alibi witnesses.[12]

The investigating officer testified that he informed Alexander on June 28th (11 days after the alleged rape) of the contemplated charge and of the date of the alleged rape.[13] Alexander, however, testified that he first learned of the alleged rape when he was arrested ninety-one days after it had occurred. He did, however, acknowledge that he was interviewed by the investigating officer on June 28th, that the investigating officer had asked him where he was on the night of June 17th, whether he knew A.F., if he knew where she worked, and whether he had ever taken her home. He stated, however, that he thought the investigating officer was looking into possible criminal drug charges against Dale Cummings, a mutual friend of A.F. and him.

Alexander was sufficiently concerned so that he contacted an attorney, Phillip Weidner, who in turn called the investigating officer. The investigating officer, according to Weidner, refused to indicate the nature of any contemplated charges against Alexander and would only say that there was an ongoing criminal investigation.

▪▪ The testimony of Alexander and of the officer was not heard by the same judge below, and thus the conflict was not resolved in a proper fact finding proceeding.[14] A conflict existed as to when Alexander was put on notice of the contemplated charges. We remand for a rehearing on this point with specific instructions that the credibility of the witnesses be determined and a finding made as to when Alexander was put on notice enabling him to prepare his defense to the charge. A single judge should hear all the testimony.

This problem of testimony heard by different judges previously came before this court in *In re C.L.T.*, 597 P.2d 518, 521–23 (Alaska 1979). In that case, we noted case law arguably in support of the proposition that due process requires the fact finder to base its findings on testimony of witnesses personally observed if in conflict.[15] In that case, the second judge listened to the tapes of the proceedings before the first judge. Further, there was no objection to the procedure, and we declined to find plain error

10. *Robinson v. United States*, 459 F.2d 847, 851 (D.C. Cir. 1972); *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972).

11. *Coffey v. State*, 585 P.2d 514, 520 n.19 (Alaska 1978).

12. At trial, Alexander testified (1) that when he was waiting in the parking lot to pick up his wife, he saw several people but did not remember who they were; and (2) that a friend had been contacted who had seen Alexander and his family at Eat Me Submarine but the friend was unable to recall the date of his observations. Alexander's wife testified that when the family dined at Eat Me Submarine, she recognized a few people but could not remember who they were. Alexander's next door neighbor testified that Alexander and his family stopped by to invite the neighbor to accompany them to the circus, but the neighbor could not remember on what day the incident occurred.

13. The officer's testimony was arguably impeached circumstantially by his police report of the conversation which did not distinctly state that Alexander was informed of the contemplated charge. The officer's statement indicated that he refused to give the same information to defendant's attorney who telephoned the officer on Alexander's behalf, and that the indictment returned was a secret one.

14. Judge Occhipinti heard the officer's testimony concerning the conversation that he had with Alexander eleven days after the alleged rape, while Judge Carlson heard Alexander's version and the circumstantial impeachment of the officer's assertion that he told Alexander in that conversation of the details of the contemplated charge.

15. *See* cases cited in *In re C.L.T.*, 597 P.2d 518, 522 n.9 (Alaska 1979).

because the testimony was not in conflict, and thus the credibility of the witnesses was not a critical issue.

In the case at bar, the testimony was in conflict as to whether Officer Clemens informed Alexander of the charge for which he was being investigated. Since no single judge had the opportunity personally to observe and review the testimony of all relevant witnesses, a proper determination of this question has not been made, and a remand is necessary.

■ If, upon remand, the superior court finds that Alexander was advised shortly after the incident that he was under investigation for rape and given the date on which it allegedly occurred, then no prejudice has resulted and his conviction should stand. If, on the other hand, the superior court should determine that Alexander was not informed of the charge until his arrest, then the superior court must balance the prejudice suffered by Alexander as a consequence of the delay against the state's reasons for delaying the presentation of the case to the grand jury. Alexander shall be given the opportunity to present evidence of prejudice to his defense, and the state may present evidence to justify the delay. Then, the court must strike a balance weighing the reasonableness of the justification against the degree of prejudice to the defendant to determine if the motion to dismiss for pre-indictment delay should be granted.

For purposes of judicial economy, we consider the other issues presently before the court. Although a remand is required, its outcome will either result in a dismissal of the conviction or a finding of no pre-indictment delay. If the latter occurs, then we would again be asked to consider the remaining issues on appeal. Therefore, we have determined to consider them now so that whatever the outcome of the hearing, possible further delay in this case for a return to this court may not occur.

## II. IMPEACHMENT BY PRIOR ROBBERY CONVICTION

Alexander submits that the court's refusal to enter a protective order to prohibit his impeachment by means of his prior robbery conviction was error. At the time of trial, Alaska Criminal Rule 26(f)(1) provided:

> *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime involved dishonesty or false statement.

Alaska Criminal Rule 26 was rescinded, effective August 1, 1979, and the identical provision is now Alaska Rule of Evidence 609(a). In addition, Rule of Evidence 609(c), which was formerly Alaska Criminal Rule 26(f)(4), states:

> *Admissibility.* Before a witness may be impeached by evidence of a prior conviction, the court shall be advised of the existence of the conviction and shall rule if the witness may be impeached by proof of the conviction by weighing its probative value against its prejudicial effect.

We have recently considered the admissibility of a prior grand larceny conviction under Alaska Criminal Rule 26(f). *Lowell v. State*, 574 P.2d 1281 (Alaska 1978). It was asserted in *Lowell* that grand larceny was not an offense involving dishonesty or false statement within the terms of Alaska Criminal Rule 26(f). We stated:

> Appellant points out that the conference report on the analogous Rule 609(a) of the Federal Rules of Evidence states:
>
> > 'By the phrase [dishonesty and false statement] the committee means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of untruthfulness, deceit or falsification bearing on the accused's propensity to testify truthfully,' Moore, *Federal Practice*, Rules Pamphlet, Part 2, p. 626 (2d ed. 1975).
>
> Larceny is not expressly included within this list. However, we agree with those courts and commentators who have held that larceny and embezzlement, among others, disclose the kind of dishonesty and

unreliability which bear upon the veracity of persons perpetrating those crimes. As to this question we find no error.[16] *Id.* at 1284. The viability of *Lowell* was reaffirmed in *Richardson v. State,* 579 P.2d 1372, 1376–77 (Alaska 1978), which approved impeachment on the basis of a prior conviction for petty larceny.

■■■ We find *Lowell* to be controlling with respect to impeachment by prior robbery conviction. Although robbery[17] involves the additional element of force or putting in fear, it, like larceny, concerns the unlawful taking of something of value.[18] We hold that robbery is a crime of dishonesty within the terms of Alaska Rule of Evidence 609(a). Thus we conclude that it was properly admissible for impeachment.

## III. THE COMPLAINING WITNESS' GRADES AND SCHOOL ABSENCES

■■■ Alexander also contends that the superior court erred by granting a protective order suppressing two defense exhibits consisting of a school transcript and a handwritten absentee synopsis. Alexander argues that this demonstrative evidence corroborates the basis for A.F.'s mother's anger and is relevant to the defense that A.F. and her friends fabricated the rape to placate the mother's wrath.

While we agree that the evidence was relevant,[19] we find no error in its exclusion. In so finding, we emphasize that a trial court's evidentiary rulings are reviewed to determine whether an abuse of discretion occurred.[20] From the testimony presented, the jury was aware of A.F.'s poor grades, her excessive absenteeism and her mother's anger.[21] Thus, Alexander was not prevented from presenting his fabrication defense.

Alaska Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair preju-

**16.** In a footnote, 574 P.2d at 1284 n.8, we cited: *United States v. Carden,* 529 F.2d 443, 446 (5th Cir.), *cert. denied,* 429 U.S. 848, 97 S.Ct. 134, 50 L.Ed.2d 121 (1976); *Gordon v. United States,* 383 F.2d 936, 940 (D.C. Cir. 1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); *contra, Government of Virgin Islands v. Toto,* 529 F.2d 278, 281–83 (3d Cir. 1976); M. Ladd, *Credibility Tests—Current Trends,* 89 U. of Pa.L.Rev. 166, 179–80 (1940). *See generally,* Comment, *Impeaching and Rehabilitating a Witness with Character Evidence,* 9 U.C.D.L. Rev. 319, 353–57 (1976).

**17.** AS 11.15.240 provided at the time of the offense:

*Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

**18.** It is the larceny element of robbery which makes such a conviction admissible as impeachment of a witness. Thus, had it been requested, the defendant could have restricted the prejudicial impact of the conviction by requesting that it be referred to as "a larceny-type offense." The forcible nature of the taking is not probative on the question of a witness' credibility and may have an inflammatory effect on a jury. No such request, however, was made by defendant in this case, and we decline to hold that the trial judge should have *sua sponte* limited the admission of the conviction. Of course, the prosecution would not be bound by such a limitation if the witness denies the conviction, in which event, the judgment document may be offered into evidence.

**19.** Alaska R.Evid. 401 provides:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See Poulin v. Zartman,* 542 P.2d 251, 260 (Alaska 1975). *See also Eubanks v. State,* 516 P.2d 726, 729 (Alaska 1973); *Hartsfield v. Carolina Cas. Ins. Co.,* 451 P.2d 576, 578 (Alaska 1969); *Mitchell v. Knight,* 394 P.2d 892, 894 (Alaska 1964). A.F.'s motive to fabricate was clearly at issue in the trial.

**20.** *Newsom v. State,* 533 P.2d 904, 908 (Alaska 1975).

**21.** The jury also knew that A.F.'s mother was unaware of the degree of absenteeism. Compare A.F.'s testimony:

Q. How about your attendance?
A. Wasn't very good.
Q. How good is not very good?
A. I didn't go very often.
with her mother's testimony:
Q. Did she lose any other time?
A. Are you asking if the ditched school?
Q. Yes.
A. Yes, she's ditched school.
Q. And you're having problems getting her in—staying in school, right?

dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We find that this evidence could properly have been excluded as cumulative and that there was no abuse of discretion on the superior court's part in excluding it.

## IV. DISPLAY OF TROUSERS IN CLOSING ARGUMENT

■ Alexander also argues that prosecutorial misconduct occurred through the display of the victim's blood stained trousers to the jury during final argument. The trousers, which are the subject of this specification of error, had been previously admitted into evidence when the prosecutor began final summation. Alexander alleges that two prejudicial inferences were created by the prosecutor's use of the pants and because they remained draped over the jury rail through the reading of the jury instructions: that the blood was causally connected to the rape, and therefore corroborated the fact of sexual intercourse and that the act was accompanied by violence.

The state argues that the display called the attention to the jury to tangible evidence that corroborated A.F.'s testimony against the defense of fabrication. Specifically, it is contended that the blood stain is evidence that A.F. spoke truthfully when she stated that Alexander forced her to remove her tampax in the car, thereby facilitating unchecked menstruation, which stained her pants.

We note that Alexander made no contemporaneous objection to the display of the pants, although it was relied upon in a motion for a new trial. In *McMaster v. State*, 512 P.2d 879, 884 (Alaska 1973), we

declined to entertain a specification of error relating to misconduct in the state's closing argument where no objection was made "during the prosecutor's argument."[22] We recently reaffirmed the necessity of timely objection to alleged prosecutorial misconduct in *Randall v. State*, 583 P.2d 196, 200 (Alaska 1978).[23] By not objecting before the jury retired, Alexander was in a position to secure an acquittal or raise the point when it could not be corrected except by means of a new trial. Since the point was not properly preserved, the specification does not warrant reversal. We do not find plain error[24] in the trial court's failure to order removal of the pants. Though it may have been prejudicial, we conclude that it did not affect Alexander's substantial rights to the extent that he was denied a fair trial.

## V. CAUTIONARY INSTRUCTION

Prior to December 1975, Alaska Rule of Criminal Procedure 30(b)(2) required trial courts, whether or not requested to do so, to give on all proper occasions an instruction that the oral admissions of a party ought to be viewed with caution.[25] The mandatory nature of this instruction was eliminated by amendment. Alaska Criminal Rule 30(b) now reads:

> *Instructions to Be Given.* The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict.

Elimination of the mandatory nature of this instruction left it to the trial court to determine when the giving of the cautionary instruction is appropriate. The superior court in this case did not give a cautionary instruction concerning Alexander's out-of-

---

A. No, I didn't have a problem in getting her to stay at school. She had probably did this one or twice, but it wasn't a great problem of her ditching school.

**22.** *See also People v. Plotner*, 188 Colo. 297, 534 P.2d 791, 794 (1975); *People v. Simbolo*, 188 Colo. 49, 532 P.2d 962, 964 (1975).

**23.** *Accord, Howard v. State*, 491 P.2d 154, 156 (Alaska 1971); *Dimmick v. State*, 449 P.2d 774,

776 (Alaska 1969); *Sidney v. State*, 408 P.2d 858, 862 (Alaska 1965).

**24.** Alaska R.Crim.P. 47(b) provides:
Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

**25.** The defendant did not originally raise the issue on appeal, but the court requested supplementary briefing on it.

court admissions, although one had been requested. In denying Alexander's request, the superior court stated that the proposed instruction referred to statements, not admissions. Defense counsel correctly stated it referred to admissions, and the trial judge in turn stated:

Since the defendant had offered himself as a witness his credibility is placed exactly the same as the credibility of any other witnesses who testified here. If, in fact, he had made an admission or a confession or anything close to that the cautionary instruction would have been included. Anything further?

■■■■ The state's argument that in this appeal we must proceed under a plain error analysis because Alexander did not object to the lack of a cautionary instruction[26] is without merit. The state's position requires a hypertechnical reading of Alaska Criminal Rule 30 and the instant

record. Defense counsel did not explicitly object, but he had proposed a cautionary instruction and defended it when the superior court inaccurately characterized it. As noted previously, the superior court rejected the instruction, and the record clearly contains the superior court's reasons. This preserves the objection for Alaska Criminal Rule 30 purposes.[27]

The purposes behind the contemporaneous objection requirement are to obtain a ruling by the trial court that may be reviewed on appeal, and to afford the trial court the opportunity to correct an alleged error.[28] Since the superior court ruled that it would not give the cautionary instruction and explained its reasons, we believe that the purposes behind the contemporaneous objection requirement were substantially fulfilled. Applying plain error analysis in this case would elevate form over substance.[29]

---

**26.** Alexander suggests that, despite the amended rule, the oral admissions cautionary instruction is still mandatory even if counsel does not request it. He relies on the judicial response to events in California, where the legislature repealed a statute making the instruction mandatory. The Supreme Court of California, relying on "decisional law," still found the instruction mandatory. *People v. Beagle*, 6 Cal.3d 441, 99 Cal.Rptr. 313, 322 n.4, 492 P.2d 1, 10 n.4 (1972).

In Alaska, the situation is different. There is no independent "decisional law"—the decisions relied on the rule—and the court, not the legislature, amended the rule. The clear purpose behind the amendment is to require a defendant to request the admissions instruction (or object to its omission). In the absence of a request or an objection, the defendant must rely on plain error, just as with any other instruction. *See Anthony v. State*, 521 P.2d 486, 490 (Alaska 1974) (interpreting old Alaska Criminal Rule 30(b), we "reluctantly" concluded that we must notice on appeal failure to give cautionary instruction regarding accomplice testimony, even though defendant did not object, despite our "disinclination" to do so).

In *Carman v. State*, 602 P.2d 1255, 1260 (Alaska 1979), we held that failure to request an instruction on the oral admission of a party and no objection to its absence resulted in a waiver, and the claim was not considered on appeal.

**27.** The court has sometimes phrased its requirement for contemporaneous objection in the following terms:

Ordinarily, this court will not notice errors in jury instructions *unless timely request is made for an omitted instruction* or timely objection made to an erroneous one.

*Anthony v. State*, 521 P.2d 486, 490 (Alaska 1974) (footnote omitted, emphasis added). The defendant's proposal of the cautionary instruction was the functional equivalent of a timely request for an omitted instruction.

**28.** *Dimmick v. State*, 449 P.2d 774, 776 (Alaska 1969). The government cites *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), which analyzed the benefits of state contemporaneous objection requirements for evaluating subsequent federal habeas corpus claims: "A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest . . . ." 433 U.S. at 88, 97 S.Ct. at 2507, 53 L.Ed.2d at 609. Put another way, the policy behind the objection requirement is to allow the trial judge a chance to correct the alleged error. *Rank v. State*, 373 P.2d 734, 738 (Alaska 1962), *disapproved on other grounds, Shafer v. State*, 456 P.2d 466, 468 (Alaska 1969); *State v. Avent*, 209 Or. 181, 302 P.2d 549, 550 (1956).

**29.** *See People v. Morse*, 60 Cal.2d 631, 36 Cal. Rptr. 201, 215, 388 P.2d 33, 47 (1964), where the court stated that defendant's failure to object to an erroneous instruction at trial did not foreclose review on appeal because an objection would have been "useless and unavailing." *Cf. People v. Terry*, 2 Cal.3d 362, 85 Cal.Rptr. 409, 432, 466 P.2d 961, 984 (Cal.1970), *cert.*

Having found that the issue is preserved, we must determine whether or not it was error not to give the instruction. The superior court rejected the proposed cautionary instruction for two reasons: Alexander's statements were not admissions and he had testified in the trial.

The cautionary instruction serves to focus the jury's attention on particular items of evidence before them. Its purpose is to assist the jury in determining what weight to give this type of evidence. The reason for viewing such evidence with caution are those traditionally associated with hearsay evidence: namely, problems of inaccurate reporting either through willful falsehood, inaccurate memory or incorrect understanding of what was said or meant.[30] As the California Supreme Court noted in *People v. Bemis*, 33 Cal.2d 395, 202 P.2d 82, 84 (Cal.1949):

> It is a familiar rule that verbal admissions should be received with caution and subjected to careful scrutiny, as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by the omission or the changing of words, to convey a false impression of the language used. No other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the party himself.[31]

Given that this is the reason for the cautionary instruction, it seems that if there are other indicators to the jury of what weight to give such evidence, the instruction is not necessary. In repealing former Criminal Rule 30(b)(2) that required this instruction in all cases and substituting the more general provision quoted above, we concluded that this cautionary instruction is not necessary in all cases in which a criminal defendant had made statements that could be characterized as admissions. This case is an example of one in which the rationale for giving the instruction is otherwise met. Thus, there was no error in not giving the instruction.

In the case at bar, the defense was alibi. Alexander denies raping A.F. and testified that he had been at the circus on the evening the charged rape was alleged to have occurred. Alexander's alleged admissions were the following:

(1) Kim Issermoyer, a friend of A.F., testified that Alexander had said he wanted to have sex with her;

(2) Dale Cummings testified that Alexander told him to say he only borrowed Cummings' car in the morning;

(3) Officer Clemens testified that Alexander told him that he went to the circus another day but had gone to a company meeting the evening of the rape.[32]

All of these statements could be considered to constitute admissions under the broad definition of admissions we noted in *Stork v. State*, 559 P.2d 99, 102 (Alaska 1977) (footnote omitted):

> In his treatise on Evidence, McCormick distinguishes between confessions and admissions and points out that an admission need not be an acknowledgment of facts which directly establish the defendant's

---

denied, 406 U.S. 912, 92 S.Ct. 1619, 32 L.Ed.2d 112 (1972) (citation omitted):

> However, it is settled that when an objection and an admonition could not cure the prejudice caused by improper remarks, failure to object does not preclude urging the error on appeal.

**30.** *See generally* C. McCormick, Handbook of the Law of Evidence, § 245, at 581–84 (2nd ed. 1972); C. Tribe, *Triangulating Hearsay*, 87 Harvard L.Rev. 957 (1976); R. Lempert and S. Saltzberg, A Modern Approach to Evidence, 330–38 (1977).

**31.** *Quoting* 2 Jones, Commentaries on the Law of Evidence, 620.

**32.** A fourth alleged admission was the statements the victim stated Alexander made during the rape. We have concluded these do not constitute "admissions." A defendant does not "admit" to a crime by a victim reporting her version of what is said during the alleged incident.

guilt. Statements which are intended to prove innocence but which, when proven untrue, imply guilt are admissions.

[An admission exists where] the mere making of the assertion (without regard to its truth) tends to prove guilt. For example, in a conspiracy trial evidence was introduced that one defendant had denied knowing the other defendants on a given date. This was an admission because the assertion, when considered with other proof which tended to show it was erroneous, indicated consciousness of guilt and therefore permitted an inference of actual guilt. McCormick, *Evidence*, 2d Ed., § 146, p. 310, citing *Williamson v. United States*, 310 F.2d 192, 199 (9th Cir. 1962).

Stork's conflicting versions of the cause of his wife's death follow the same pattern as the example given by McCormick. They constituted admissions because when considered together and compared with Stork's testimony at trial, they could have been interpreted by the jury as an attempt to cover up the truth and as proof of Stork's consciousness of guilt. The first "admission" does little more than suggest, by Kim Issermoyer's testimony, that Alexander had made an overt attempt to have sex with another girl under 16 years of age. This certainly has some relevancy to the charge.[33] Only under a very broad sweeping definition can this statement be considered an admission, since it is at most a confession to a professed propensity to commit a statutory rape.[34] While we are uncertain as to the propriety of considering this an admission, our flexible conclusion as to the treatment of admissions does not require us to make fine distinctions as to what is or is not an admission. Thus, we need not address whether the superior court was correct in finding this not to be an admission.

The other two statements are more clearly admissions. The attempt to influence a witness to give false testimony is classically considered an admission and Dale Cummings' testimony could be so construed. The alleged statement to Officer Clemens as to when Alexander went to the circus undermines his entire alibi defense. As a prior inconsistent statement, it is also an admission because the possible falsification of his in-trial testimony could be considered as an acknowledgment of guilt.

Whether there were two or three admissions, it is nevertheless significant that Alexander took the stand and testified "either acknowledging or denying making the alleged admission and if acknowledging it offering an explanation of what was meant or specifically said." For example, he explained the statement by Dale Cummings and part of his statement to Officer Clemens as follows:

I—at first when the Investigator came to me, I thought they had busted Dale or someone in Dale's car with weed. And was checking me for—since he said it was a routine check to see if I had been in that car with that weed at anytime. So that's why I asked Dale not to put me anywhere near it and when he asked me, I said no, I haven't been anywhere near it.

The fact that a defendant testifies in large part negates the need for a cautionary instruction regarding admissions. By giving an explanation or denying that the potentially incriminating statements were made, a defendant focuses for the jury the reasons why oral admissions are to be viewed with caution. To further instruct the jury to view oral admissions with caution in such

---

33. However, we question whether such evidence is more prejudicial than probative. Since no objection was made to this evidence, we need not determine whether it is properly excludable under Alaska R.Evid. 403.

34. Alaska R.Evid. 404(b) provides that other crimes evidence cannot be admitted to prove a propensity to commit an offense, although it may be admissible for some other purpose. Evidence of an oral statement representing a desire to commit a similar offense as that charged, though not within the purview of Rule 404(b), should be carefully considered, if there is an objection, as to its probative weight and prejudicial effect.

circumstances is tantamount to a comment upon the evidence. Instead of leaving the admission to the jury to decide which version should be believed and what weight to be placed on such statements, a cautionary instruction singles out admission evidence from all other evidence in the trial. In instructing to view this evidence with caution, the instruction itself could be taken by the jury as a judicial comment against the believability of the witness's version and thus favoring that of the defendant. Considering Alexander's explanations, the need for giving a cautionary instruction was largely obviated.

■ Further, the superior court carefully instructed the jury as to its duty to determine the credibility of witnesses and weigh the evidence. They were instructed as to direct and circumstantial evidence, to reconcile conflicting or inconsistent testimony or if that is not possible, to give weight to the evidence most worthy of belief, and that the testimony of the defendant is to be judged by the same standard as that of other witnesses. Finally, they were instructed:

> In determining the credibility of witnesses and the weight to be given their testimony, you should decide what testimony is to be believed in the same way you would decide whether to believe something told you out of court. Evaluate the witnesses, their appearance and demeanor, as they appeared in court in the same way you would evaluate informants out of court. Reflect upon the opportunity they had to observe, or learn, or remember the facts to which they tes-

tified. Consider as well whether they have an interest in the outcome of the trial, or may have had a motive for testifying as they did. Weigh the probability or improbability of their testimony and whether they demonstrated a bias or prejudice against or inclination to favor either party, and the extent to which they were corroborated or contradicted by other testimony.

Given the defendant had testified and explained exactly what he had said and why, we think this instruction is sufficient to warn the jury of the problems presented by admissions testified to anyone other than the declarant. These instructions adequately informed the jury of its duties and responsibilities in considering any oral admissions.

■ If the defendant does not testify and other evidence is not presented that points to the unreliability of such evidence, then the need for a cautionary instruction is greater. Given the advantages and disadvantages of the use of such an instruction, it is for the trial court to consider the appropriateness of a proper cautionary instruction [35] in light of the state of the evidence and the other instructions to be given.[36] In the case at bar, we conclude that it was not error for the superior court to refuse to give the proposed cautionary instruction.

## VI. SENTENCE APPEAL

Finally, Alexander contends that his sentence of seven and one-half years for rape is excessive. The sentence is to be concurrent with twelve years of a 1973 robbery

**35.** Alexander's proposed instruction did not inform the jury what an admission is. When a cautionary instruction is appropriate, it should define admission. *See, e. g.,* CALJIC 2.71.

**36.** The superior court stated that if it had concluded that Alexander had made an admission, it would have given the cautionary instruction. The dissent suggests that since we have concluded that admissions were made by Alexander and that the giving of this cautionary instruction is discretionary, then an abuse of discretion existed in the court's incorrect conclu-

sion that these statements were admissions. We do not think that the superior court's refusal to give a cautionary instruction was based merely on a technical categorization of what is and what is not an admission. The court stated its other reason for not giving the admission was the fact that Alexander testified. The superior court's erroneous conclusion that there were no admissions does not itself require a finding that the court erred in failing to give an instruction when its other ground for refusing to give an instruction we find sufficient.

conviction.[37] Alexander argues that the court minimized Alexander's chances for rehabilitation and greatly emphasized community condemnation of the offense.

Further, Alexander raises two specific contentions in his sentence appeal which shall be considered prior to a determination of whether the sentence is excessive: (1) the superior court erred in considering the victim's testimony as to violence during the rape, and (2) the superior court failed to adequately consider Alexander's psychiatric condition.

■■ During sentencing, the superior court stated:

> [T]he evidence has disclosed that not only was this a statutory rape, under the statutes, but that a degree of violence was utilized by you, by your taking up a knife or a sharp instrument, resulting in the culmination of the offense. I cannot disregard the evidence.

The following exchange occurred between defense counsel and the court after sentence was pronounced:

> MR. BOYKO. . . . I'd like to advise the court respectfully that I would assign error to the court's consideration of the evidence of alleged violence in this case, which came from the victim and was not corroborated in any manner, because he was not charged—although he could have been charged—with the offense of violent ra—of forcible rape. Under those circumstances, it seems to me for the court to consider that in sentencing would be error; and I respectfully so note—would like to note for the record.
>
> THE COURT: I should like to respond to you, Mr. Boyko, that the court at time of sentencing must take everything into consideration, those matters that are beneficial to the accused as well as those matters which are detrimental to him—if in fact they do arise at the trial. . . .

MR. BOYKO: I understand, Your Honor.

THE COURT: . . . *and are proved.* All right. Mr. Alexander may be turned over to corrections. We'll stand in recess. (emphasis added)

The violence was not an element of the charged offense and was not proven by the conviction. Alexander notes that this court has disapproved of the use at sentencing of unverified police contacts or other antisocial conduct not sufficiently verified.[38] However, this is not a separate incident of prior misconduct but the manner in which the alleged offense, for which the defendant has been convicted, is said to occur. The only description of the rape came from the victim. The superior court, who observed her demeanor at trial, certainly had the best opportunity to determine whether violence occurred during the rape. If it so concludes, this is a relevant matter for sentencing. We do not find the superior court's consideration of this circumstance of the offense to be improper.

■■ As to the need for psychiatric help, the superior court, as part of the judgment of commitment, went on to provide:

> It is the further order of this court that during your period of imprisonment that you will be given the necessary psychiatric help and assistance in order to be able to return you to society as a person who is not a persistent and consistent offender, as I find that you are.

Given the need in this case for a substantial term of imprisonment, this order adequately provides for the necessary psychiatric help.

■■ As for the sentence of seven and one-half years, we must determine if the superior court was clearly mistaken in imposing the sentence it did.[39] Alexander was convicted of statutory rape. By statute, such a crime may be punished by imprison-

---

37. *See Alexander v. State,* 578 P.2d 591 (Alaska 1978), in which we upheld the robbery sentence of twelve years imposed as part of a probation revocation in conjunction with the current offense.

38. *See, e. g., Nukapiqak v. State,* 576 P.2d 982, 983 (Alaska 1978); *Robinson v. State,* 492 P.2d 106, 107 (Alaska 1971); *Peterson v. State,* 487 P.2d 682, 683 n.1 (Alaska 1971).

39. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

ment for any term of years. We have often noted that rape is an extremely serious crime[40] and have repeatedly affirmed sentences well in excess of five years for convictions of the crime of rape.[41] This crime was perpetrated in a violent fashion, as has already been discussed. Further, Alexander has had two prior robbery convictions, a forgery conviction, and a heroin possession conviction.[42] The rape occurred while Alexander was on parole.[43] Given Alexander's prior record and the nature of the present offense, we conclude that the superior court was not clearly mistaken.

This case is remanded to the superior court to determine if prejudicial pre-indictment delay occurred; otherwise, the rulings of the superior court are Affirmed.

BOOCHEVER, Chief Justice.

I dissent from the portion of the opinion which concludes that the trial court did not err in failing to give a cautionary instruction.

Before December, 1975, Rule 30(b)(2), Alaska R.Crim.P., required the court, whether or not requested to do so, to give an instruction on all proper occasions that the oral admissions of a party ought to be viewed with caution. The mandatory nature of this instruction was eliminated by the amended Criminal Rule 30(b), which now reads:

(b) *Instructions to Be Given.* The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict.

The mandatory nature of the instruction was eliminated after our decision in *Anthony v. State*, 521 P.2d 486 (Alaska 1974), in which we reluctantly reversed a conviction due to failure to give the instruction, even though the omission was not called to the attention of the trial court. The obvious reason for the change in the rule was not a belief that the three previously mandated instructions were not important, but to prevent defendants from possibly seeking to take advantage of a court's oversight whereby the defendant could hope for a not-guilty verdict and be assured that error was present if the jury returned a guilty verdict. That the change cannot be considered an indication that the instructions were of little importance is emphasized by the fact that one of the three instructions previously mandated referred to the basic concept that guilt be established beyond a reasonable doubt. (Former Alaska R.Crim.P. 30(b)(3).)

The trial court in this case did not give a cautionary instruction concerning defendant's out-of-court admissions.

The defendant proposed the following cautionary instruction to the judge:

You should view with caution any oral *admissions* testified to as having been made by the defendant outside this courtroom. [Emphasis added.]

The judge, when asked why no cautionary instruction concerning the defendant's out-of-court admissions was being given, said that the proposed instruction referred to statements. Defense counsel correctly noted that the instruction referred to admissions, but the trial judge concluded:

**40.** *See State v. Wassilie*, 578 P.2d 971 (Alaska 1978); *State v. Lancaster*, 550 P.2d 1257 (Alaska 1976); *Newsom v. State*, 533 P.2d 904 (Alaska 1975).

**41.** In the only sentence appeal of a statutory rape conviction, we affirmed a sentence of ten years. *Wagner v. State*, 598 P.2d 936 (Alaska 1979). For rape convictions, we have affirmed sentences of from six to twenty years. *See Torres v. State*, 521 P.2d 386 (Alaska 1974) (20 years concurrent with existing 10-year sentence); *Newsom v. State*, 533 P.2d 904 (Alaska 1974) (15 years); *Newsom v. State*, 512 P.2d 557 (Alaska 1973) (15 years); *Moore v. State*,

597 P.2d 975 (Alaska 1979) (15 years); *Morrell v. State*, 575 P.2d 1200 (Alaska 1978) (eight concurrent 10-year sentence on eight counts); *Coleman v. State*, 553 P.2d 40 (Alaska 1976) (two concurrent 10-year sentences on two counts); *Gordon v. State*, 501 P.2d 772 (Alaska 1972) (10 years); *Ames v. State*, 533 P.2d 246 (Alaska 1975) (eight years); *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977) (six years).

**42.** *Alexander v. State*, 578 P.2d 591, 593 n.5 (Alaska 1978).

**43.** *Id.* at 592.

Since the defendant had offered himself as a witness his credibility is placed exactly the same as the credibility of any other witnesses who testified here. If, in fact, he had made an admission or a confession or anything close to that the cautionary instruction would have been included.

I agree with the majority that the state's argument that we must proceed under a plain error analysis is meritless. It is apparent that the issue of the lack of an instruction was adequately brought to the trial court's attention. The trial judge rejected the proposed cautionary instruction for two reasons: defendant's statements were not admissions, and the defendant had testified in the case. I believe that the court was in error as to both reasons.

The defendant denied raping A. F. and said he had been at the circus the evening the rape occurred. The state introduced three witnesses who testified, in part, about what the defendant allegedly said. Kim Issermoyer, another girl under age 16, testified that the defendant had asked her to have sex. Dale Cummings testified that the defendant told him to say he only borrowed Cummings' car in the morning; and Officer Clemens testified that the defendant told him he went to the circus another day but had gone to a company meeting the evening of the rape. As the majority recognizes, all of these statements constituted admissions.

In *Stork v. State*, 559 P.2d 99 (Alaska 1977), decided under the old version of Rule 30(b), we reversed a manslaughter conviction because the trial judge failed to give the admissions cautionary instruction. In *Stork* three witnesses testified at trial, describing three different exculpatory versions that the defendant had related to them concerning his wife's death. We held that these different exculpatory versions of events were admissions.

Stork testified at trial as to his version of his wife's death. We did not indicate that Stork's testifying made it unnecessary to give the cautionary instruction.

In the absence of the defendant admitting on the witness stand that he made the statement in question, the fact of his testifying does not lessen the need for the instruction. The admissions cautionary instruction directs the jury to be cautious about what *other people* say that the defendant said. The cautionary instruction warns the jury about the unreliability of testimony that relates what someone else said. *See People v. Bemis*, 33 Cal.2d 395, 202 P.2d 82, 84 (1949), quoted in the majority opinion, for an apt expression of the reasons for giving the instruction. Thus, the fact that Kim Issermoyer, Dale Cummings and Officer Clemens testified about what the defendant said calls the instruction into play, irrespective of whether the defendant also testified.[1]

The principal reason advanced by the trial court for the failure to give the requested instruction was the judge's mistaken belief that the statements did not constitute admissions:

If, in fact, he had made an admission or a confession or anything close to that the cautionary instruction would have been included.

The majority recognizes that the trial court erred in concluding that the statements did not constitute admissions. Thus, both of the reasons advanced by the trial court for not giving the instruction were erroneous.

The majority says that it is for the trial court to consider the appropriateness of a proper cautionary instruction in light of the state of the evidence and other instructions to be given, and that it was not error to refuse to give the proposed instruction here. Apparently an abuse of discretion standard is being applied. From this I gather that the majority would not consider it to have

---

1. I do agree, however, that the defendant's testimony concerning his request to Dale Cummings to say he only borrowed Cummings' car in the morning makes it less necessary to give the cautionary instruction as to that admission. In the absence of a defendant admitting making

the out-of-court statement, the cautionary instruction becomes just as important when the jury is confronted with balancing the defendant's testimony against the alleged out-of-court admission as when the defendant does not take the stand.

been error for the trial court to have exercised its discretion in favor of giving the instruction. Yet the trial judge clearly indicated that he would have given the instruction if out-of-court admissions had been made. Since the majority recognizes that such admissions were made and the trial court indicated it would have given the instruction had he correctly construed the statements as admissions, it is clear that error was made in failing to give the instruction.

Where a trial court exercises its discretion under a mistake as to applicable law and has indicated that its decision would have been otherwise had it not been laboring under such a mistaken impression, it is self-evident that its discretion was not properly exercised.[2] In a similar situation we have remanded a case for resentencing where a court may have imposed a more severe sentence because of a mistaken belief that a statute required a mandatory minimum sentence. Thus, in *Call v. State*, 511 P.2d 135 (Alaska 1973), where the court imposed a four-year sentence under the mistaken belief that a two-year sentence was mandated, we remanded for resentencing. Although a probation officer had recommended a suspended sentence, the trial court had not indicated that it would have imposed a lesser sentence. Because the court's discretion may have been based in part on a weighing of the alternatives available under its erroneous view of the applicable law, we remanded. This is obviously a stronger case than *Call* because we know that the court here would have exercised its discretion to give the instruction were it not for its mistaken view that the statements did not constitute admissions. It follows that there was an abuse of discretion.

Not only do I believe that the abuse of discretion is self-evident, but in my opinion, regardless of the trial court's error as to applicable law, it would have been an abuse of discretion not to have given the requested instruction. Here the case was dependent on whether the jury was to believe Alexander or A.F. The oral admissions were of key importance in reaching that decision. No confusion or prejudice would be injected into the case by giving the instruction. If the instruction is ever to be considered applicable, it should be so considered in this case, and the failure to give it when requested, in my opinion, constituted reversible error.

The state argues that the failure to give the instruction, if error, was harmless.[3] In *Love v. State*, 457 P.2d 622, 630 (Alaska 1969), we elaborated upon Alaska's standard for harmless error on questions that do not implicate rights guaranteed under the federal constitution:

> The test is not whether, with the erroneous matter elided from the record, there would be enough evidence to support a conviction. It is not for us to speculate on the outcome at a retrial, absent the erroneous matter. The pivotal question is what the error might have meant to the jury. Our function is to consider not how the error would have affected us if we had tried the case, but how it may have affected a jury of reasonable laymen. It is the impact on their minds which is critical in determining whether an error impaired or affected the substantial interest of the defendant in having a fair trial.

The importance of the evidence and the effect of other instructions are usually the

---

**2.** In *Lipsett v. United States*, 359 F.2d 956, 959 (2d Cir. 1966), the court stated: "[A]n exercise of discretion based on a misconception of the law is an abuse of discretion." *See also American Bd. Cas., Inc. v. Walter Reade-Sterling, Inc.*, 43 Cal.App.3d 401, 117 Cal.Rptr. 617, 621 (1974); *In re Adoption of Driscoll*, 269 Cal. App.2d 735, 75 Cal.Rptr. 382, 384 (1969); *Pitts v. White*, 10 Terry 78, 109 A.2d 786, 788 (Del. 1954); *Peterson, Howell & Heather v. O'Neill*, 314 So.2d 808, 810 (Fla.App. 1975); *Sokol v.*

*Liebstein*, 9 N.J. 93, 87 A.2d 1, 4 (1952); *Associates Discount Corp. v. Wise*, 156 Pa.Super. 659, 41 A.2d 418, 419 (1945); *First Wis. Nat'l Bk. v. KSW Invest., Inc.*, 71 Wis.2d 359, 238 N.W.2d 123, 126 (1976).

**3.** *See* Rule 47(a), Alaska R.Crim.P., which provides:

> *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

two factors that determine the probable impact of the error upon the jury.[4] The testimony by the three witnesses about what Alexander said was obviously important to the state's case. The relevancy of Kim Issermoyer's testimony was to prove by Alexander's alleged statement that he had made an overt attempt to have sex with another girl under 16 years of age. This would certainly have some affect on the jury's deliberations. The alleged attempt to have Dale Cummings give false testimony as to the time his car was used would likely be regarded by the jury as a substantial indication of guilt. The alleged statement to Officer Clemens as to when Alexander went to the circus undermined his entire alibi defense. The importance of this evidence is equivalent to the importance of evidence in other cases where we have found prejudicial error from a failure to give the admissions cautionary instruction.[5]

The majority argues that other instructions took the place of the cautionary instruction, relying in part on Instruction No. 11, a customary instruction telling the jury to subject the defendant's testimony to the same tests as other witnesses. Defendant's argument, however, is that the jury was never told to evaluate the *other* witnesses' statements about the defendant's admissions with care. Instruction 11 does not convey the same concept as the oral admissions cautionary instruction. Nor did any of the other instructions contain this key to evaluating the testimony which, until recently, we considered so vital as to mandate a cautionary instruction even in the absence of a request.

Instruction No. 22, another common instruction, told the jury to "decide what testimony is to be believed in the same way you would decide whether to believe something told you out of court." Instruction 22 is relevant only if we assume that a juror would, from common experience, judge testimony about what other people said with caution.

To indulge this assumption would make the admissions instruction almost always

---

**4.** *See Stork v. State*, 559 P.2d 99, 102 (Alaska 1977) (importance of the evidence); *Kristich v. State*, 550 P.2d 796, 800–01 (Alaska 1976) (same); *Bakken v. State*, 489 P.2d 120, 125 (Alaska 1971) (same); *cf. Middleton v. State*, 577 P.2d 1050, 1054 (Alaska 1978) (curative impact of other instructions where court failed to give cautionary instruction regarding accomplice testimony).

**5.** *See Stork v. State*, 559 P.2d 99, 103 (Alaska 1977) (testimony of three witnesses about defendant's differing versions of shooting "substantial factor" in conviction); *Bakken v. State*, 489 P.2d 120 (Alaska 1971). The facts in *Bakken*, a statutory rape case, are similar to the facts in this case. The principal evidence against the defendant was the complaining witness's somewhat inconsistent testimony and testimony by a friend of the defendant that the defendant had commented on the size of the victim's vagina. The court concluded:

> Due to the questionable quality of [the complaining witness's] testimony, [the friend's] evidence assumed a crucial role in the conviction of Bakken.
>
> .    .    .    .    .
>
> Given the closeness of the case and the importance of [the friend's] testimony concerning Bakken's purported admission, we believe that the trial court's failure to give this mandatory cautionary instruction was so

obviously prejudicial that we choose to notice the point despite the absence of any objection .    .    . .

*Id.* at 123, 125 (footnotes omitted).

Contrast *Bakken* with *Kristich v. State*, 550 P.2d 796, 800–01 (Alaska 1976), where the failure to give the admissions cautionary instruction in a gambling prosecution was held not prejudicial. The defendant's statements that the roll, or house money, was across the street was not critical since other "ample evidence" established gambling was occurring on the premises.

Prior to its amendment, Rule 30(b)(2), Alaska R.Crim.P., directed that the court, on all proper occasions, give a cautionary instruction regarding accomplice testimony. In cases dealing with this related area, our analysis of whether prejudice resulted from failure to give a cautionary instruction suggests that the defendant was prejudiced in this case. *Compare Anthony v. State*, 521 P.2d 486, 489–92 (testimony of accomplice who was only witness placing defendant at scene of crime held a "substantial factor" in conviction) *with Middleton v. State*, 577 P.2d 1050, 1053–55 (Alaska 1978) (testimony of accomplice about defendant's participation in robbery not critical in light of eyewitness testimony to the robbery and possession of floor plans).

superfluous because Instruction 22, or something close to it, is almost always given. The California courts have rejected the rationale that juries will naturally apply the policy behind the cautionary instruction. *People v. Bemis*, 33 Cal.2d 395, 202 P.2d 82, 84–85 (1949). Most jury instructions embody common sense ideas, but we believe that the judge should remind the jury to apply these ideas. What we said about the accomplice cautionary instruction in *Anthony v. State*, 521 P.2d 486, 491 (Alaska 1974), is equally applicable here:

> The giving of the instruction to view the testimony of an accomplice with distrust clothes the issue with the cloak of the judge's impartial authority and thus mandates application of that criterion in the jury's deliberation. For this reason alone, the failure to give the accomplice instruction cannot be regarded as harmless under the circumstances of this case.

I would hold that the failure to give the requested instruction was reversible error mandating a new trial.